1  Karen Artz Ash *(Pro Hac Vice Application Filed)*
   James J. Calder *(Pro Hac Vice Application Filed)*
2  **KATTEN MUCHIN ROSENMAN LLP**
   575 Madison Avenue
3  New York, New York 10022-2585
   Telephone: 212.940.8800
4  Facsimile: 212.940.8776
   karen.ash@kattenlaw.com
5  james.calder@kattenlaw.com

6  Stuart M. Richter (Cal. State Bar No. 126231)
   Zia F. Modabber (Cal. State Bar No. 137388)
7  Gregory S. Korman (Cal. State Bar No. 216931)
   **KATTEN MUCHIN ROSENMAN LLP**
8  2029 Century Park East, Suite 2600
   Los Angeles, CA 90067-3012
9  Telephone: 310.788.4400
   Facsimile: 310.788.4471
10 stuart.richter@kattenlaw.com
   zia.modabber@kattenlaw.com
11 gregory.korman@kattenlaw.com

12 Attorneys for Defendant
   SPEEDO USA, a division of
13 WARNACO SWIMWEAR, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

16

| | |
|---|---|
| TYR SPORT, INC., a California corporation | Case No.: SACV 08-00529 JVS (MLGx) |
| Plaintiff, | **NOTICE OF MOTION AND MOTION BY DEFENDANT SPEEDO USA TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| WARNACO SWIMWEAR, INC. dba SPEEDO USA, a Delaware corporation; UNITED STATES SWIMMING, INC., an Ohio corporation; MARK SCHUBERT, an individual; ERIK VENDT, an individual; and DOES 1 through 10, inclusive, | [Filed concurrently with Request for Judicial Notice] |
| Defendants. | Date:  November 3, 2008<br>Time:  1:30 p.m.<br>Ctrm:  2C |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE THAT** on November 3, 2008 at 1:30 p.m., or as soon thereafter as the matter can be heard, before the Honorable James V. Selna, in Courtroom 2C of the United States District Court, Central District of California, located at 411 W. Fourth Street, Santa Ana, California 92701, defendant Warnaco Swimwear, Inc. dba Speedo USA ("Speedo") will, and hereby does, move for an order dismissing the first through fourth and sixth through tenth claims for relief asserted in the Complaint by Plaintiff TYR Sport, Inc.[1]

This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiff's first through fourth and sixth through tenth claims do not state a claim upon which relief can be granted against Speedo for the following reasons:

The First and Second Claims for Violations of the Sherman Act should be dismissed because TYR has failed to plead facts necessary to: define an appropriate relevant market; show that Speedo has done anything to foreclose competition in any relevant market; establish that it meets the stringent test in this Circuit for establishing antitrust liability based on a defendant's advertising and promotional statements; and show that it has suffered injury in fact and antitrust injury. The Third Claim for Violation of the Cartwright Act fails for the same reasons as the Sherman Act claims.

---

[1]    This motion refers to the claims for relief as they are numbered in the body of Plaintiff's Compliant. The claims are numbered differently on the cover page of the Complaint.

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

31433533v9 9/15/2008 7:36 PM

1  The Fourth Claim for False Advertising in Violation of the Lanham Act
2  should be dismissed because the allegedly false statements identified by TYR are
3  puffing and/or opinion and therefore are not actionable under the Lanham Act.

4  The Sixth Claim for Tortious Interference with Contractual Relations should
5  be dismissed because Speedo is legally entitled to compete with TYR and the fact
6  that an athlete chose Speedo's product over TYR's competing product cannot be the
7  basis for civil liability.

8  The Seventh Claim for Tortious Interference with Prospective Economic
9  Advantage should be dismissed because TYR has not identified any specifically
10  identifiable economic interest lost.

11  The Eighth Claim for Trade Libel should be dismissed because the allegations
12  identified by TYR are not actionable as puffing and/or opinion, and because TYR
13  has not alleged specific damages.

14  The Ninth Claim for Unfair Business Practices should be dismissed because
15  Plaintiff has not alleged (and cannot allege) illegal, fraudulent, or unfair acts or
16  practices.  The Ninth claim should also be dismissed because Plaintiff improperly
17  seeks damages and punitive damages, which are not available under Section 17200
18  of the Business and Professions Code.

19  The Tenth Claim for Injunctive Relief should be dismissed because it is not a
20  claim; it is a remedy that must be pled in conjunction with a viable claim that will
21  support equitable relief.

22  This Motion is based on this Notice of Motion, the accompanying
23  Memorandum of Points and Authorities, the concurrently filed Request for Judicial
24  Notice, the Complaint, the papers and records on file, and such further argument or
25  evidence as may properly be presented to this Court.

26  This motion is made following the conference of counsel pursuant to Local
27  Rule 7-3 which took place on June 13, 2008.

28

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Katten
KattenMuchinRosenman LLP

31433533v9 9/15/2008 7:36 PM

1

2 Dated:  September 15, 2008

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KATTEN MUCHIN ROSENMAN LLP
Stuart M. Richter
Zia F. Modabber
Gregory S. Korman

By: _____
    Stuart M. Richter

Attorneys for defendant SPEEDO USA, a
division of WARNACO SWIMWEAR, INC.

31433533v9 9/15/2008 7:36 PM

**Katten**
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

## TABLE OF CONTENTS

Page

I.   INTRODUCTION AND SUMMARY OF ARGUMENTS. ....................... 1

II.  STATEMENT OF FACTS. ........................................................... 3

III. THE FIRST, SECOND AND THIRD CLAIMS FOR VIOLATIONS OF THE SHERMAN ACT AND CARTWRIGHT ACT SHOULD BE DISMISSED.  5

    A.   TYR Fails to State a Claim Based on Speedo's Sponsorship of US Swimming. ......................................................................... 5

        1.   TYR has not alleged that Speedo's agreement with US Swimming forecloses competition in any relevant market...... 5

        2.   TYR does not define a relevant market for advertising or promotion or plead that it is foreclosed from such a market... 7

        3.   TYR does not adequately plead a market for "high-end competitive swimwear." ......................................................... 9

        4.   TYR fails to allege how it is injured in the market for "high-end competitive swimwear." ......................................................... 10

        5.   TYR admits that it has suffered no antitrust injury. .............. 10

    B.   TYR Fails to State a Claim Based On Speedo's and Schubert's Promotion of the LZR Swimsuit. ..................................................... 11

IV.  THE FOURTH CLAIM FOR FALSE ADVERTISING FAILS BECAUSE THE STATEMENTS ARE NOT ACTIONABLE. .................................... 12

    A.   The Statements Attributed To Schubert Are Not Actionable. ......... 13

    B.   TYR Admits That Schubert's Statements Are Not........................... 17

Actionable. ................................................................................. 17

    C.   Speedo's Promotional Materials Are Not Actionable..................... 18

V.   THE SIXTH CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS SHOULD BE DISMISSED. ................ 20

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

i

31433533v9 9/15/2008 7:36 PM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

VI.    THE SEVENTH CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE SHOULD BE DISMISSED. 21

VII.   THE EIGHTH CLAIM FOR TRADE LIBEL SHOULD BE DISMISSED. 23

VIII.  THE NINTH CLAIM FOR UNFAIR BUSINESS PRACTICES SHOULD BE DISMISSED. .............................................................................. 24

IX.    THE TENTH CLAIM FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED. .............................................................................. 25

X.     CONCLUSION. ........................................................................... 25

ii

**NOTICE OF MOTION AND MOTION TO DISMISS**

31433533v9 9/15/2008 7:36 PM

# TABLE OF AUTHORITIES

**Cases**

Alaska Airlines, Inc. v. United Airlines, Inc.,
  948 F.2d 536 (9th Cir. 1991).................................................................6, 7, 10

Am. Prof'l Testing Serv. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.,
  108 F.3d 1147 (9th Cir. 1997)...................................................................11, 12

Am. Prof'l Testing Serv. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns,
  108 F.3d 1147 (9th Cir. 1997)................................................................7, 11, 12

Asia Investment Co. v. Borowski,
  133 Cal. App. 3d 832 (1982).........................................................................22

Bank of the West v. Super. Ct.,
  2 Cal. 4th 1254 (1992)....................................................................................25

Bell Atl. Corp. v. Twombly,
  __ U.S.__, 127 S.Ct. 1955 (2007) .................................................................5

Big Bear Lodging Ass'n v. Snow Summit, Inc.,
  182 F.3d 1096 (9th Cir. 1999)..................................................................8, 9, 10

Blank v. Kirwan,
  39 Cal. 3d 311 (1985).....................................................................................22

Boule v. Hutton,
  70 F. Supp. 2d 378 (S.D.N.Y. 1999) .............................................................15

Breakdown Servs., Ltd. v. Now Casting, Inc.,
  2007 WL 5159700, No. 05-6732 (C.D. Cal. Jan. 25, 2007) .........................5

Brown Shoe Co. v. United States,
  370 U.S. 294 (1962) .........................................................................................5

Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,
  429 U.S. 477 (1977) ....................................................................................5, 11

Coastal Abstract Serv., Inc. v. First Amer. Title Ins. Co.,
  173 F. 3d 725 (9th Cir. 1999).....................................................................13, 23

NOTICE OF MOTION AND MOTION TO DISMISS

31433533v9 9/15/2008 7:36 PM

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

CollegeNet, Inc. v. Embark.Com, Inc.,
    230 F. Supp. 2d 1167 (D. Or. 2001)...................................................................14

Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.,
    911 F. 2d 242 (9th Cir. 1990) ..........................................................................13

Erlich v. Etner,
    224 Cal. App. 2d 69 (1964)..............................................................................23

Federation Internationale De Football Ass'n v. Nike, Inc.,
    285 F. Supp. 2d 64 (D.D.C. 2003).....................................................................24

Geneva Pharm. Tech Corp. v. Barr Labs,
    386 F.3d 485 (2d Cir. 2004) ...........................................................................6, 8

Gertz v. Robert Welch, Inc.,
    418 U.S. 323 (1974) .................................................................................13, 15

Global Telemedia Intern., Inc. v. Doe 1,
    132 F. Supp. 2d 1261 (C.D. Cal. 2001)...............................................................16

Gordon & Breach Sci. Publishers, S.A. v. Amer. Inst. of Physics,
    859 F. Supp. 1521 (S.D.N.Y. 1994)..............................................................17, 18

Gregory v. Albertson's, Inc.,
    104 Cal. App. 4th 845 (2002)...........................................................................24

Hofmann Co. v. E. I. Du Pont de Nemours & Co.,
    202 Cal. App. 3d 390 (1988) ...........................................................................17

Jefferson Parish Hosp. Dist. No. 2 v. Hyde,
    466 U.S. 2 (1984) .......................................................................................7, 8

Kahn v. Bauer,
    232 Cal.App.3d 1599, 284 Cal. Rptr. 244 (1991) ...................................................17

Lipton v. Nature Co.,
    71 F. 3d 464 (2d Cir. 1995) .............................................................................18

McGlinchy v. Shell Chem. Co.,
    845 F.2d 802, n.4 (9th Cir. 1988)........................................................................5

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

iv

<u>Noah v. Enesco Corp.,</u>
911 F. Supp 305 (N.D. Ill. 1995)................................................................25

<u>nSight, Inc. v. PeopleSoft, Inc.,</u>
2005 WL 1287553 (N.D.Cal. 2005)........................................................16, 23

<u>Reuben H. Donnelley Corp. v. Mark I. Mktg. Corp.,</u>
893 F. Supp 285 (S.D.N.Y. 1995)..............................................................25

<u>Roth v. Rhodes,</u>
25 Cal. App. 4th 530 (1995)......................................................................22

<u>Samura v. Kaiser Foundation Health Plan, Inc.,</u>
17 Cal. App. 4th 1284 (1993)....................................................................24

<u>Sanderson v. Culligan Int'l Co.,</u>
415 F.3d 620 (7th Cir. 2005).....................................................................11

<u>Smith-Victor Corp. v. Sylvania Elect. Products, Inc.,</u>
242 F.Supp. 302 (N.D.Ill.1965).................................................................13

<u>Tampa Elec. Co. v. Nashville Coal Co.,</u>
365 U.S. 320 (1961) ..................................................................................8

<u>Tanaka v. Univ. of S. Cal.,</u>
252 F.3d 1059 (9th Cir. 2001).............................................................7, 8, 9

<u>Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.,</u>
915 F. Supp. 360 (S.D. Fla. 1996).............................................................19

<u>U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.,</u>
898 F. 2d 914 (3rd Cir. 1990)....................................................................14

<u>Westside Center Associates v. Safeway Stores 23 Inc.,</u>
42 Cal. App. 4th 507 (1996)..................................................................22, 23

<u>Wright v. Coules,</u>
4 Cal. App. 343 (1906)..............................................................................23

**Statutes**

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

v

31433533v9 9/15/2008 7:36 PM

15 U.S.C. § 1 ..................................................................................................5

15 U.S.C. § 2 ..................................................................................................5

15 U.S.C. 1125(a)(1)......................................................................................12

Federal Rule of Civil Procedure 12(b)(6) ..............................................2, 13

**Other Authorities**

5 B.E. Witkin, Summ. Cal. Law, Torts § 756, p. 1094-95 (10th ed. 2005)...................20

Business and Professions Code Section 17200 ...............................3, 24, 25

Levy, Golden & Sacks, Cal. Business Torts, § 40.75 (Bender 1999) ..........................23

**Rules**

Local Rule 7-3.................................................................................................3

NOTICE OF MOTION AND MOTION TO DISMISS

31433533v9 9/15/2008 7:36 PM

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Katten
Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF ARGUMENTS.

Plaintiff TYR Sport, Inc.'s complaint is a legally defective attempt to use the antitrust and unfair competition laws to challenge Defendant Speedo USA's legitimate marketing of the Speedo LZR Racer Swimsuit.   Since its debut in February 2008, the LZR Swimsuit has been the subject of substantial publicity, primarily because swimmers wearing it have set an unprecedented 71 world records, including numerous world records at the 2008 Beijing Olympic Games.   In a transparent attempt to divert attention from the highly successful LZR product and the deluge of positive press surrounding it, TYR filed a meritless lawsuit, on the eve of the Summer games, attacking Speedo, United States Swimming, Inc., Mark Schubert (the coach of the U.S. Olympic swim team), and three-time Olympian, Erik Vendt.   TYR claims that the Defendants have somehow stifled competition in the "market" for high-end competitive swimwear by favoring the LZR Swimsuit, not because it is a superior product (notwithstanding the results achieved by athletes wearing it), but because Speedo sponsors US Swimming and Coach Schubert is supposedly an undisclosed consultant for Speedo.   All of TYR's claims against Speedo fail as a matter of law.

The antitrust claims fail because TYR's allegations do not establish anticompetitive behavior in either of the two "markets" alluded to by TYR:   the "market" for sponsorship and promotional opportunities in competitive swimming, and the "market" for high-end competitive swimwear.   It cannot be alleged that Speedo has foreclosed competition for sponsorship and promotional opportunities by negotiating contracts with US Swimming, coaches, and athletes that are legal – in fact approved of by the US Olympic Committee.   TYR admits that it too has entered into similar sponsorship agreements; it just has not been as successful as Speedo. Given TYR's admissions, this defect is incurable.   However, Even if the Court were

**NOTICE OF MOTION AND MOTION TO DISMISS**

to ignore TYR's admission, TYR does not and cannot allege that Speedo's sponsorships have caused an anticompetitive effect in the separate "market" for competitive swimwear or any other cognizable antitrust market.

Nor does TYR allege any statements of fact by Coach Schubert or Speedo that would support claims for trade libel or false advertising under the Lanham Act. All of the supposedly false statements attributed to Defendants are non-actionable puffery. The fact that these statements are attributed to Coach Schubert, who is alleged to be an "undisclosed" consultant to Speedo, does not make them actionable statements of fact. Moreover, Coach Schubert's relationship with Speedo is disclosed in the very articles that TYR cites as the source of his supposedly false statements.

TYR's remaining claims are equally unavailing. Speedo is entitled to compete with TYR by any legitimate means, and therefore the fact that athletes are choosing the LZR Swimsuit over the TYR swimsuit cannot be the basis for claims of intentional interference. There is no liability under the unfair competition laws because the Complaint reveals that Speedo has not illegally stifled competition or made any misrepresentations; to the contrary, all of Speedo's alleged actions are legitimate and in furtherance of its right to compete. Finally, TYR's claim for injunctive relief is not a claim at all; it is a remedy. TYR must allege which of its various legally defective claims might support the purported remedy of injunctive relief.

The timing of the filing of the Complaint reveals that TYR's true motive was not to challenge supposedly anticompetitive behavior, but rather to garner for its own swimsuit pre-Olympic publicity that could not otherwise be generated by legitimate marketing efforts or performances by athletes wearing the TYR suit. When TYR's allegations are addressed under a Rule 12 analysis, each of its claims fails and this entire action should be dismissed.

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

2

## II.   STATEMENT OF FACTS.

According to TYR's Complaint, TYR and Defendant Speedo are both engaged in the business of designing, manufacturing and selling swimwear and accessories. (Compl. ¶ 9.)

The equipment at issue in this action is swimsuits.   In February 2008, in anticipation of the United States Olympic trials and the August 2008 Beijing Olympic Games, Speedo introduced its new LZR Racer Swimsuit with Fast Skin technology. (Req. For Jud. Notice Ex. A.)  A few weeks prior to the introduction of the LZR Swimsuit, Plaintiff TYR introduced its new top-of-the-line swimsuit, the "Tracer Rise." (Compl. ¶ 26.)

Plaintiff TYR alleges that Defendant Speedo, in conjunction with Defendants US Swimming and Schubert, have restrained competition in the alleged market for high-end, competitive swimsuits, disparaged TYR's products, falsely advertised Speedo's products, and interfered with TYR's sponsorship contracts.   TYR claims that the Defendants did so through Speedo's sponsorship of US Swimming, which is the "national governing body for the sport of swimming." (Id. ¶ 4.)

TYR contends that US Swimming, because of its relationship with Speedo, has restrained trade by not offering sponsorship opportunities to TYR and other competitors at US Swimming meets and other events, and not accepting TYR advertising in US Swimming's official publication, "Splash" Magazine. (Id. ¶¶ 11, 12.)  TYR does not cite to any specific provision dealing with sponsorships under the Ted Stevens Act, U.S. Olympic Committee Rules, or any other law, rule, or regulation for a National Governing Body like US Swimming that suggests there is anything improper in Speedo's sponsorship of US Swimming or Schubert's conduct in his role as a Speedo consultant.

TYR also alleges that Speedo carried out its plan to restrain competition through Defendant Mark Schubert, who is the coach and general manager of the

3

31433533v9 9/15/2008 7:36 PM

United States Olympic Swim Team. (Id. ¶ 14.)  According to TYR, Coach Schubert allegedly exerted his influence on athletes and caused them to choose the Speedo LZR Swimsuit over competing products.  He supposedly did so by expressing his opinions regarding the advantages of wearing the LZR Swimsuit in competition.[1] Schubert's alleged statements are described by TYR in paragraph 16 of the Complaint and generally reflect Coach Schubert's opinions that the LZR Swimsuit is the best suit for elite swimmers. (Id. ¶ 16.)

TYR concedes that Coach Schubert's statements, if made directly by Speedo or any other manufacturer, would not be actionable; rather, they would be understood as marketing statements made in the hope of selling equipment.  (Id. ¶ 17.)   TYR claims, however, that because the statements are made by Coach Schubert, they are not marketing opinions but actionable statements of fact because Coach Schubert holds a special position as US Swim Team coach and has allegedly not disclosed that he is a consultant to Speedo. (Id.)

There is no allegation in the complaint that it is illegal or in any way improper for Speedo to pay Coach Schubert as a consultant.  Nor is there any allegation that the select few "elite" athletes who would buy these expensive ($500) swimsuits are unaware of Coach Schubert's relationship with Speedo.  As set forth in the articles attached to Speedo's Request for Judicial Notice, Coach Schubert's relationship with Speedo is no secret.  When discussing the LZR Swimsuit, Coach Schubert has been quoted as stating "I am not just saying this because they [Speedo] pay part of my salary; I am all about performance and I believe in the product." (Req. For Jud. Notice Ex. A.)   During these press conferences, it has been noted that Coach

---

[1]     The success of the LZR swimsuit is well documented.  Since its introduction, 71 world records were broken by athletes wearing the LZR swimsuit. (Req. For Jud. Notice Exs. A, B.)

4

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Schubert was wearing a shirt with a Speedo logo. (Id.) It has also been reported in the national media (and in press materials disseminated by Speedo) that Coach Schubert was a technical consultant involved in the development of the LZR Swimsuit. (Id. Exs. C, D.)

## III. THE FIRST, SECOND AND THIRD CLAIMS FOR VIOLATIONS OF THE SHERMAN ACT AND CARTWRIGHT ACT SHOULD BE DISMISSED.

The antitrust laws were enacted for "the protection of competition, not competitors." Brown Shoe Co. v. United States, 370 U.S. 294, 320 (1962). Here, faced with the competitive challenge of a breakthrough product, TYR seeks court protection from the tough realities of a competitor's innovation. The antitrust laws are not to be so misused. Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488 (1977); Tanaka v. Univ. of S. Cal., 252 F.3d 1059, 1064 (9th Cir. 2001).

To plead violations of the Sherman Act, a plaintiff must allege facts that are sufficient to create a plausible inference that the defendants have committed an antitrust violation. Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). As demonstrated below, TYR has failed to do so under Sections 1 or 2 of the Sherman Act. 15 U.S.C. §§ 1, 2. As a result, the Cartwright Act claim is also deficient. See Breakdown Servs., Ltd. v. Now Casting, Inc., 2007 WL 5159700, No. 05-6732, *11-12 (C.D. Cal. Jan. 25, 2007) (summary judgment).

### A. TYR Fails to State a Claim Based on Speedo's Sponsorship of US Swimming.

#### 1. TYR has not alleged that Speedo's agreement with US Swimming forecloses competition in any relevant market.

Generously read, TYR's antitrust claims have two elements: (a) as the sponsor of US Swimming, Speedo receives certain exclusive promotional benefits; and (b) Speedo and Schubert have allegedly made certain false statements

5

31433533v9 9/15/2008 7:36 PM

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

concerning the Speedo LZR Racer and have allegedly disparaged the TYR Tracer Rise suit.    TYR alleges that these "anticompetitive" activities in sponsorship, promotion, and advertising – all of which occur in a "market" that TYR never defines – have caused certain of its sponsored swimmers to "defect" to the Speedo suit, and that these "defections" somehow impair its ability to sell its "high-end competitive swimwear" in another, separate market. (Compl. ¶¶ 9, 13, 19, 33.)

In cases like this, where a plaintiff alleges that anticompetitive conduct in one market (here some undefined market for promotion, advertising, or sponsorship of elite swimmers) causes an anticompetitive effect in a separate market (the "market for high-end competitive swimwear"), it is necessary to define both markets and show how the conduct in the first market causes injury in the second.    Alaska Airlines, Inc. v. United Airlines, Inc., 948 F.2d 536, 546 (9th Cir. 1991) (alleged monopoly in airline reservation system used to restrain market for airline ticket sales); Geneva Pharm. Tech. Corp. v. Barr Labs., 386 F.3d 485, 494, 506, 509 (2d Cir. 2004) (exclusive supply agreement with monopoly provider of active ingredient for pharmaceutical used to restrain trade in downstream market for pharmaceuticals); Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990) (alleged monopoly over magazine advertising used to restrain market for nutrition supplements); LiveUniverse, Inc. v. MySpace, Inc., 2007-2 Trade Cas. (CCH) ¶ 75,782, No. 06-6994, 2007 U.S. Dist. Lexis 43739, *56 (C.D. Cal. June 4, 2007) (alleged monopoly in social networking sites used to restrain market in advertising).

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

6

Thus, in addition to the basic elements for pleading a cause of action under Sherman Act Sections 1 and 2,[2] TYR must allege facts sufficient to: (a) define the market in which the exclusive sponsorship agreement between Speedo and US Swimming, and the other promotional activities complained of, operate; (b) show that the agreement and the other activities complained of foreclose TYR from obtaining advertising and promotion in that market; (c) define the market for competitive swimwear equipment, where TYR claims to be injured; and (d) demonstrate that the restriction in the advertising and promotion "market" has caused TYR to be injured in the swimwear market. Alaska Airlines, 948 F.2d at 542, 545-47 & n.12; Geneva Pharm., 386 F.3d at 495-96, 501-06. In addition, the injury TYR claims to have suffered must constitute antitrust injury. LiveUniverse, 2007 U.S. Dist. Lexis 43739, at *50-51. TYR either fails to plead these elements of market definition and causation at all, or fails to do so with the factual allegations required in this Circuit.

## 2. TYR does not define a relevant market for advertising or promotion or plead that it is foreclosed from such a market.

For an exclusive agreement to violate Sherman Act Sections 1 or 2, it must foreclose access to a significant portion of a "relevant market." Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 45 (1984) (O'Connor, J., concurring); Tampa

---

[2]     Section 1 requires: (1) a contract, combination, or conspiracy that (2) unreasonably restrains trade. Tanaka, 252 F.3d at 1062. Monopolization under Section 2 requires proving the defendant: (1) possessed monopoly power in the relevant market and (2) willfully acquired or maintained its monopoly power through exclusionary conduct. Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc., 108 F.3d 1147, 1151 (9th Cir. 1997). Attempted monopolization under Section 2 requires: (1) a specific intent to monopolize a relevant market; (2) predatory or anticompetitive conduct; and (3) a dangerous probability of success. Alaska Airlines, 948 F.2d at 542.

7

31433533v9 9/15/2008 7:36 PM

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Elec. Co. v. Nashville Coal Co., 365 U.S. 320, 333-35 (1961); Omega Envtl., Inc. v. Gilbarco, Inc., 127 F.3d 1157, 1162-63 (9th Cir. 1997).

This analysis cannot even begin without first defining the relevant market. It is the reason why defining the relevant market in the complaint is a prerequisite to asserting most claims under Section 1 or 2 of the Sherman Act. Tanaka, 252 F.3d at 1063; Big Bear Lodging Ass'n v. Snow Summit, Inc., 182 F.3d 1096, 1101, 1104-05 (9th Cir. 1999) ("Proving injury to competition in a rule of reason case almost uniformly requires a claimant to prove the relevant market and to show the effects upon competition within that market.") (quotation omitted). Despite this basic requirement, TYR has made no effort to define the market in which the US Swimming sponsorship and Shubert's spokesperson relationship with Speedo operate. This deficiency is fatal to TYR's claims and warrants dismissal under Rule 12(b)(6).

TYR must also plead facts showing that the promotional opportunities offered by US Swimming exclusively to Speedo constitute such a large portion of the relevant market that TYR is "frozen out" from purchasing advertising, promoting its products, or sponsoring swimmers. Jefferson Parish, 466 U.S. at 45; see also Geneva Pharm., 386 F.3d at 508-09. TYR has not done so and, even if allowed to amend, cannot cure this defect because it has affirmatively pleaded that it is **not** foreclosed from advertising, promoting, or sponsoring swimmers to endorse its product. Specifically, TYR boasts that it sponsors more than **fifty** world-class swimmers, including numerous Olympic medalists and World Champions. (Compl. ¶ 25.) In the face of these allegations, any attempted amendment would be futile, and the first, second, and third claims should be dismissed with prejudice.

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

8

31433533v9 9/15/2008 7:36 PM

### 3.   TYR does not adequately plead a market for "high-end competitive swimwear."

TYR does attempt to define, and claims to be injured in, the market for "high-end competitive swimwear and accessories such as goggles, swim caps, training equipment, sport and warm-up suits, sold to competitive swimmers in the professional, collegiate, high school and club ranks."  (Id. ¶ 9.)  This kind of conclusory market definition is legally insufficient at the pleading stage.  In order properly to allege a relevant product and geographic market in this Circuit, a plaintiff must plead facts demonstrating that there are no other goods or services that are reasonably interchangeable with those contained in the proposed relevant market, and that the proposed geographic market is the area of effective competition in which buyers can find alternative sources of supply.  Big Bear, 182 F.3d at 1105. Plaintiff's Complaint contains no allegations regarding interchangeability or cross-elasticity of demand, much less the underlying facts that would be necessary to support a relevant market for "high-end competitive swimwear and accessories."

Plaintiff's definition of a relevant geographic market that is limited to "the entire United States and its territories" is equally flawed.  The Complaint lacks even a conclusory allegation that in response to a price hike in competitive swimwear, consumers would look only to manufacturers in the U.S., and that no new foreign manufacturers would enter the market.  This is especially significant since TYR affirmatively identifies two foreign manufacturers – Adidas and Arena – which it claims have "recently exited" the market.  (Compl. ¶ 9.)  Given TYR's complete failure to plead any facts in support of the defined market in which it claims to be injured, its antitrust claims should be dismissed.  See Tanaka, 252 F.3d at 1063; Big Bear, 182 F.3d at 1105; Los Angeles Mem'l Coliseum Comm'n v. NFL, 726 F.2d 1381, 1393 (9th Cir. 1984).

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

31433533v9 9/15/2008 7:36 PM

### 4.   TYR fails to allege how it is injured in the market for "high-end competitive swimwear."

TYR has also failed to plead facts showing that the exclusive relationship between Speedo and US Swimming has injured TYR in its sale of competitive swimwear.  At most, TYR alleges that some of its sponsored swimmers – only one of whom it identifies – chose to wear Speedo's LZR Swimsuit for the Olympic trials.  (Compl. ¶ 33.)  The decision by elite athletes to wear the LZR Swimsuit, however, does not cause injury in the market for "high-end competitive swimwear."[3]  In other words, notwithstanding TYR's conclusory assertion of injury, nothing in its Complaint explains how Speedo's relationship with US Swimming, Coach Schubert's statements, and the "defection" of Eric Vendt affects TYR's sale of swimwear.  This failure to allege any facts linking its claimed injury in the swimwear market to Speedo's alleged anti-competitive conduct is fatal to TYR's claim.  Alaska Airlines, 948 F.2d at 545 ("It is clear that defendants' control of their [computerized reservations systems] did not give them the power to eliminate competition in the downstream air transportation market."); Geneva Pharm., 386 F.3d at 509.

### 5.   TYR admits that it has suffered no antitrust injury.

As mentioned at the opening of this section, the antitrust laws protect competition, not competitors.  To avoid the misuse of the antitrust remedy by competitors seeking to avoid the rigors of competition, a plaintiff must show and plead that the defendant's conduct harms competition in the market and that the plaintiff's injury flows from that very harm to competition.  Big Bear, 182 F.3d at 1102; LiveUniverse, 2007 U.S. Dist. Lexis 43739, at *50-51 ("Harm to one or more

---

[3]   This is particularly true where US Olympic Committee rules mandate that an athlete may choose his own equipment.  (Req. For Jud. Notice Ex. E.)

NOTICE OF MOTION AND MOTION TO DISMISS

31433533v9 9/15/2008 7:36 PM

competitors is not sufficient to constitute antitrust injury unless a plaintiff alleges harm to the competitive process.")

Here, TYR alleges that it has "suffered antitrust injury because SPEEDO has acquired or maintained its dominant market position, at the expense of other competitors in the market." (Compl. ¶ 34.) That is an allegation of injury to competitors – not competition. It is not covered by the antitrust laws. Brunswick Corp., 429 U.S. at 489.

**B.     TYR Fails to State a Claim Based On Speedo's and Schubert's Promotion of the LZR Swimsuit.**

The second half of TYR's antitrust claim is based on Shubert's alleged statements praising the LZR Swimsuit and Speedo's supposed false advertising to team dealers. Some circuits refuse to even recognize antitrust claims based on alleged false advertising or disparaging comments made by one competitor about another. See e.g., Sanderson v. Culligan Int'l Co., 415 F.3d 620, 623-24 (7th Cir. 2005). While this Circuit will recognize such claims in limited instances, it is hardly surprising that the standard a plaintiff must meet to assert such claims is extremely high. Absent a high bar, every case involving comparative advertising or disparagement would be converted into a federal antitrust case. Accordingly, in this Circuit, "[w]hile the disparagement of a rival . . . may be unethical and even impair the opportunities of a rival, its harmful effects on competitors are ordinarily not significant enough to warrant recognition under § 2 of the Sherman Act." Am. Prof'l Testing Serv. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc., 108 F.3d 1147, 1151 (9th Cir. 1997) (citation omitted).

To prove that disparaging statements constitute exclusionary conduct in violation of the Sherman Act, a plaintiff must overcome a presumption that their effect on competition was *de minimus*. Id. at 1152. Overcoming the presumption requires the plaintiff to plead and prove that the "representations were (1) clearly

31433533v9 9/15/2008 7:36 PM

**NOTICE OF MOTION AND MOTION TO DISMISS**

Katten

Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

false, (2) clearly material, (3) clearly likely to induce reasonable reliance, (4) made to buyers without knowledge of the subject matter, (5) continued for prolonged periods, and (6) not readily susceptible of neutralization or other offset by rivals." Id. (quotation omitted).  All six elements of the test must be satisfied.  Id.

TYR has not even attempted to satisfy Harcourt.  TYR alleges that Schubert made statements that equipment (not identified as a TYR product) is "inferior" to Speedo's and that Speedo was "far ahead of all of its competitors on swimsuit technology"; and that "[t]here is one manufacturer that's put millions into research while the others are more into fashion."  (Compl. ¶¶ 15, 16.)  In addition, TYR alleges that Speedo has distributed false or misleading advertising materials that misrepresent performance statistics by omitting statistics for athletes using TYR products.  (Id. ¶¶ 31, 32.)

TYR has not alleged any facts to suggest that these statements were "clearly false," or "clearly material."  Nor has it pleaded that Shubert's statements were made "to buyers without knowledge of the subject matter."  TYR cannot possibly make such an allegation here.  The statements to which TYR objects were made to the most sophisticated swimmers and coaches in the world.  Indeed, on the final element of the Harcourt test, TYR makes no attempt to satisfy **its** burden by offering an account of any measure it could or did take to respond to, or to counteract, Schubert's and Speedo's allegedly false, misleading, and disparaging campaign.

In short, TYR has utterly failed to satisfy the requirements of Harcourt.  Accordingly, its antitrust claims should be dismissed.

## IV.   THE FOURTH CLAIM FOR FALSE ADVERTISING FAILS BECAUSE THE STATEMENTS ARE NOT ACTIONABLE.

The Lanham Act prohibits any false or misleading description or representation of fact about a product of an advertiser or competitor in commerce.  15 U.S.C. § 1125(a)(1).  Statements amounting to "puffing" are "not the kind of

12

31433533v9 9/15/2008 7:36 PM

detailed or specific factual assertions that are necessary to state a false advertising cause of action under the Act." See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 245-47 (9th Cir. 1990) (affirming 12(b)(6) dismissal without leave to amend because statement that "we're the low cost commercial collection experts" was puffery). Under the puffing doctrine, "advertising which merely states in general terms that one product is superior is not actionable." Id. at 246 (quotation omitted); see also Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 731 (9th Cir. 1999) (statement that competitor was "too small" to handle business is mere puffery).[4]

Similarly, opinions are not actionable both because they are not statements of fact, and because, even if false, they are protected expression under the First Amendment. Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40 (1974) ("However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.").

When viewed in light of the foregoing authorities, each of the allegedly false statements is non-actionable opinion and/or puffery.

### A. The Statements Attributed To Schubert Are Not Actionable.

In its Complaint, TYR erroneously characterizes as "false advertising" the following statements by Schubert:

- ¶¶ 16(a), 16(b): Schubert "advocated the virtues of SPEEDO's elite swimsuit technology and the results at the 2007 World Swimming Championships held in Melbourne, Australia," presented a "segment advocating the upcoming new

---

[4]    Both Cook and Coastal Abstract relied upon the reasoning and holding in Smith-Victor Corp. v. Sylvania Elect. Products, Inc., 242 F.Supp. 302, 308 (N.D. Ill. 1965). There, an advertiser's statement that its lamps were "far brighter than any lamp ever before offered for home movies" was mere puffery. Id.

13

31433533v9 9/15/2008 7:36 PM

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

1  SPEEDO LZR technology," and stated that "SPEEDO was far ahead of all of its
2  competitors in swimsuit technology."

3      Coach Schubert's advocacy of "the virtues" of "technology" is not a statement
4  about a specific product that can be proven true or false.  Nonspecific touting of the
5  "virtues" of a competitive product is classic puffing because, among other things, it
6  does not describe "specific or absolute characteristics of a product."  Similarly,
7  Schubert's claim that Speedo is "far ahead of its competitors" is clearly an opinion.
8  It falls within the puffing doctrine because it is vague, subjective, and not susceptible
9  to verification.  It is no different from claiming generally to be "better than" the
10 competition.  See e.g., U.S. Healthcare, Inc. v. Blue Cross of Greater Phila., 898
11 F.2d 914, 926 (3d Cir. 1990) ("better than" statements are the "most innocuous"
12 kind of puffing).

13      •    ¶¶ 16(c), 16(k):  Schubert orally advocated that US Team members
14 would have a "2% advantage" if they used the Speedo LZR.

15      A 2% "advantage" is not definite enough to be a factual representation.  At
16 first blush, this statement appears to refer to a concrete characteristic because it uses
17 a number.   In fact, however, it is non-actionable puffing because the number
18 modifies a wholly vague and amorphous term – "advantage."   It cannot be
19 determined from the statement whether the "advantage" is over competing products
20 or over other Speedo products, or whether the advantage relates to speed, time, drag,
21 flotation, energy used during an event, confidence, or any other of the innumerable
22 potential "advantages" a product may offer.

23      This issue was addressed in CollegeNet, Inc. v. Embark.Com, Inc., 230 F.
24 Supp. 2d 1167, 1177 (D. Or. 2001).  There, the District Court found the statement
25 that a college website "holds a 50% market share of the top United States
26 universities" was non-actionable puffing.  Id.  The court reasoned that "[w]hile the

27
28

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

14

use of '50%' is a concrete number, the phrase 'top universities' is too vague." Id. Here, the same is true for the term "advantage."

•    ¶ 16(d):    Schubert has "label[ed] criticism a case of sour grapes instigated by other swimsuit manufacturers."

The alleged "criticism" to which Schubert refers in these articles is that the LZR Swimsuit is too good and gives swimmers an unfair advantage. (Req. For Jud. Notice Exs. A, C.) This statement, which is quoted in many news articles, is not a representation of fact about any product and therefore cannot constitute false advertising.    Boule v. Hutton, 70 F. Supp. 2d 378, 388 (S.D.N.Y. 1999) (letter repudiating artist catalog not a "representation of fact" under the Lanham Act because "repudiation letter was not a statement of fact about anyone's goods"). It is unquestionably opinion and commentary on a matter of public interest. Thus, it is absolutely protected from regulation by the First Amendment. See e.g., Gertz, 418 U.S. at 339-40.

•    ¶¶ 16(e), 16(h), 16(l):  Schubert stated that:  (1) he "will tell his team to wear Speedo at the US Trials", (2) "we will go so far as to recommend every American wear the Speedo suit at the Olympic trials in June . . . . even if they are sponsored by another company", and (3) "I would strongly advise them to wear the [Speedo] swimsuit at trial, or they might end up at home watching on NBC."

The fact that Coach Schubert stated that he would recommend Speedo is not a false statement of fact.  To the contrary, TYR alleges that it is true (but somehow wrongful).    Since each of these statements merely reflect what Coach Schubert reportedly said he would do in the future, they are not actionable.

•    ¶¶ 16(f), 16(g):  Schubert stated that "US Swimmers who were using another brand than Speedo had backed the wrong horse . . .", and swimmers not wearing Speedo suits "are contracted to an inferior product . . . ."

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

15

Again, these statements are classic opinions.  Whether a swimmer "backed the wrong horse" cannot be proven true.  See e.g., Global Telemedia Int'l, Inc. v. Doe 1, 132 F. Supp. 2d 1261, 1267 (C.D. Cal. 2001) (statement that company is a "sinking ship" is opinion).  These statements also constitute predictions of future events, which are quintessential opinions.  See McCarthy § 27-109, at 27-256 n.15. Similarly, characterizing other products as "inferior" is simply the flip side of calling Speedo's product superior.  nSight, Inc. v. PeopleSoft, Inc., No. 04-3836, 2005 WL 1287553, *1 (N.D. Cal. June 1, 2005) (dismissing as puffing false advertising claim that competitor's services were "inferior").

Moreover, these statements appeared in articles, the subject of which was the performance of the LZR Swimsuit and the records set by athletes wearing the suit. There was significant public debate at that time whether the suit technology should be legal.  In the context of that debate, Coach Schubert's opinions are protected by the First Amendment.

•       ¶¶ 16(i), 16(j):  Schubert stated:  "My advice to athletes is, 'You have a black and white decision – the money [which comes from swimmers sticking with their current sponsorship deal] or the Gold Medal.'  And it's going to be a real test as to what choice they make.  There is one manufacturer that's put millions into research while others are more into fashion."  Coach Schubert also stated:  "The other [swimwear] companies just haven't put the effort in.  They've focused more on fashion than performance.  They need to get with it.  It's simple."

TYR does not (and cannot) dispute that Speedo has put millions into research, but rather claims that the statements that others "are more into fashion" and must "get with it" are false.  (Compl. ¶ 23.)  These statements do not plead actionable false advertising because there is no measurable way to determine whether Speedo's competitors are "more into fashion" than Speedo, or even what that means.  How "into fashion" a company might be constitutes pure opinion because it depends on

Katten
Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

16

31433533v9 9/15/2008 7:36 PM

1  subjective conclusions rather than provable facts.  <u>See</u> <u>Hofmann Co. v. E. I. Du Pont</u>

2  <u>de Nemours & Co.</u>, 202 Cal. App. 3d 390, 397 (Cal. Ct. App. 1988) (are not capable

3  of proof in terms of truth or falsity) (internal quotation omitted), abrogated On other

4  grounds in <u>Kahn v. Bauer</u>, 232 Cal.App.3d 1599, 1606-07, 284 Cal. Rptr. 244

5  (1991).

6      **B.    <u>TYR Admits That Schubert's Statements Are Not</u>**

7          **<u>Actionable.</u>**

8      TYR alleges in its Complaint that all the foregoing statements made by Coach

9  Schubert are otherwise non-actionable "marketing claims made in the hopes [sic] of

10  selling equipment."  (Compl. ¶ 17.)  Because these statements are made by the

11  Olympic swim team coach, and because his relationship with Speedo supposedly

12  was not disclosed, TYR claims that they are transformed into actionable statements

13  of fact. (<u>Id.</u> ¶¶ 17, 22.)  TYR's theory fails for two reasons.

14      First, facts subject to judicial notice demonstrate that Schubert's relationship

15  with Speedo is well known.  Many of the news articles from which TYR has

16  extracted the supposedly false statements by Schubert also contain quotes by

17  Schubert disclosing his role as a paid consultant for Speedo. (Req. For Jud. Notice

18  Ex. A.)  Other articles and promotional materials disclose that Schubert was

19  involved in the development of the LZR swimsuit. (<u>Id.</u> Exs. C, D.)

20      Second, the mere fact that Schubert, by virtue of his position, is viewed as a

21  person of authority, is legally irrelevant; his statements are still non-actionable

22  opinions. A virtually identical argument was considered and rejected by Judge Sand

23  in <u>Gordon & Breach Sci. Publishers, S.A. v. Am. Inst. of Physics</u>, 859 F. Supp.

24  1521, 1523-24, 1542 & n.9 (S.D.N.Y. 1994) (granting motion to dismiss).  The

25  plaintiff competed with the defendant in the publication of science journals. <u>Id.</u> at

26  1523.  The defendant published articles comparing scientific journals by price and

27  value, ranking its own journals at the top of the list and the plaintiff's at or near the

28

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

17

31433533v9 9/15/2008 7:36 PM

bottom. Id. The plaintiff argued that the articles were false advertising in part because the author's interested position as an officer of the defendant was not disclosed, "thus creating the misleading impression that [the author] had acted as an unaffiliated and unbiased scientist in preparing his surveys." Id. at 1542 n.9. The court rejected this theory, holding that "[f]ailure to disclose a conflict of interest of this nature, however, does not give rise to a Lanham Act claim." Id. at 1542.

TYR's theory of Schubert's supposedly "undisclosed" position is indistinguishable from the plaintiff's theory in Gordon & Breach. They both claimed that statements otherwise immune from false advertising liability somehow lose that immunity because the speaker has an undisclosed conflict of interest. As Gordon & Breach makes clear, however, an undisclosed conflict does not give rise to a Lanham Act violation. Taken together with TYR's own admission that Coach Schubert's statements are all puffing, the motion to dismiss should be granted as to all of Coach Schubert's alleged statements.

### C.   Speedo's Promotional Materials Are Not Actionable.

In addition to the statements made by Schubert, TYR also claims that certain Speedo promotional materials constitute false advertising. As is shown below, they too are not actionable.

•       ¶ 29   Speedo distributed a promotional document to its team dealers purporting to be "a very thorough analysis of the suit statistics from the Nationals three weeks ago," that shows "how we [SPEEDO] continue to dominate at the Senior National Level." TYR alleges that the statement is literally false because Speedo's analysis was not "thorough" in that it did not include, "among other inaccuracies", results from the 1650 yard freestyle. No other inaccuracies are identified.

The statement that Speedo's analysis was very "thorough" is puffing and opinion. Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir. 1995) (holding book

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

31433533v9 9/15/2008 7:36 PM

author's "general assertion that the research he conducted was 'thorough[ ]' is mere 'puffing' and therefore, not actionable"). Similarly, the second statement – that Speedo continues to "dominate" – is unquestionably puffing.

•   ¶ 30   TYR alleges that Speedo sent team dealers promotional materials that "understated the number of athletes wearing TYR equipment (thus overstating the percentage of athletes wearing SPEEDO)" in certain races. TYR claims that this constitutes literal falsity.

This statement falls outside the scope of the Lanham Act because it is not about the characteristics or qualities of a product. Instead, it is merely a recitation of who wore what brand of equipment during selected races. Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc., 915 F. Supp. 360, 366 (S.D. Fla. 1996) (holding advertisement not actionable because it "does not pertain to the nature, quality, characteristics, or geographic origin of the Defendants' product"). Thus, the false advertising provision of the Lanham Act does not cover reporting (even if inaccurate) of sporting events, but rather false statements of fact about characteristics or qualities of a specific product.

•   ¶¶ 31, 32   TYR alleges that Speedo accurately reports that "a large majority of swimmers who recently have won meets or set records have done so in the Speedo equipment." TYR claims, however, that this statement is misleading because "SPEEDO neglects to mention that a majority of the elite swimmers who participated in the relevant events were in SPEEDO equipment." TYR also alleges that "SPEEDO fails to mention that it sponsors a disproportionately high number of those athletes who are at the highest levels (such as Michael Phelps) and are therefore the likely candidates to set meet or world records."

Although some courts recognize that an advertisement may be misleading "by omission," the statements at issue must still pertain to the characteristics of a product. Tire Kingdom, 915 F.Supp. at 366. This statement does not relate to the

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

19

31433533v9 9/15/2008 7:36 PM

1  characteristics of a product, but rather concerns only who wore Speedo equipment.

2  Thus, it is not covered by the Lanham Act.

3      Moreover, TYR's claim that Speedo cannot distribute truthful information

4  unless it first tells its customers – elite swimmers – that it represents most elite

5  swimmers is illogical and not supported by any authority. Putting aside that this is

6  widely known information, its absence does not change the meaning of the message.

7  TYR is free to respond to these statistics in the marketplace with its own

8  interpretation of their significance, but it cannot restrain Speedo's ability to

9  accurately report race results.

10     As the foregoing demonstrates, TYR has not met its burden to allege a single

11 statement that constitutes false advertising. Hence, the Lanham Act claim should be

12 dismissed.

13 **V.   THE SIXTH CLAIM FOR TORTIOUS INTERFERENCE WITH**

14 **CONTRACTUAL RELATIONS SHOULD BE DISMISSED.**

15     TYR asserts a claim for tortious interference with contract based on its

16 allegation that co-defendant, swimmer Erik Vendt, left TYR for Speedo "[a]s a

17 direct and proximate result of the actions" of the other defendants. (Compl. ¶¶ 64-

18 65.) At best, TYR has alleged that Vendt has determined that the LZR Swimsuit is

19 superior and opted to use it in lieu of TYR's product. TYR's allegations do not

20 support a tort claim because, as a competitor, Speedo is entitled to manufacture and

21 sell the best product.

22     California follows the multifactor Restatement test for the competitor's

23 privilege. See 5 B.E. Witkin, Summ. Cal. Law, Torts § 756, at 1094-95 (10th ed.

24 2005). In determining whether an actor's conduct in intentionally interfering with a

25 contract is improper, consideration is given to the following factors: (a) the nature

26 of the actor's conduct; (b) the actor's motive; (c) the interests of the contract with

27 which the actor's conduct interferes; (d) the interests sought to be advanced by the

28

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties. Id. These factors weigh heavily in favor of application of the privilege. The nature of Speedo's conduct and its motives support a finding of privilege because Speedo's sponsorships are all lawful. There can be no bad motive to enter into lawful sponsorship contracts.

The relative interests of the parties and society also support application of the privilege. TYR's interests should be to permit our Olympic athletes to succeed in whatever equipment they elect to use. Speedo's interest is in producing the best suit possible and making it available to athletes who choose to use it. In terms of social interests, Speedo and TYR are both in the business of marketing the best possible swimwear to elite athletes, who are free to choose whatever equipment they believe will provide them with the best chance of success.

Speedo's alleged conduct is remote from the purported interference. TYR does not allege Speedo interfered with Vendt's contract. To the contrary, TYR claims that Speedo should be liable for Vendt's breach because Coach Schubert expressed his opinion that Speedo's LZR Swimsuit is a better product.

Finally, the relationship between the parties supports a finding of privilege. Speedo and TYR are direct competitors marketing equipment to sophisticated elite athletes. Accordingly, the privilege of fair competition should apply.

## VI. THE SEVENTH CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE SHOULD BE DISMISSED.

To allege a cause of action for tortious interference with prospective economic advantage, a party must demonstrate the existence of a specific economic relationship between itself and an identifiable third party "containing the probability

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

21

of future economic benefit." <u>Blank v. Kirwan</u>, 703 P.2d 58, 39 Cal. 3d 311, 330 (Cal. 1985) (affirming the sustaining of demurrer). A party cannot maintain a claim where its alleged "existing relationship [is] with . . . speculative future [customers]." <u>Roth v. Rhodes</u>, 30 Cal. Rptr. 2d 706, 25 Cal. App. 4th 530, 546 (Cal. Ct. App. 1995); <u>see also</u> <u>Westside Center Assocs. v. Safeway Stores 23 Inc.</u>, 49 Cal. Rptr. 2d 793, 42 Cal. App. 4th 507, 527 (Cal. Ct. App. 1996); <u>Asia Investment Co. v. Borowski</u>, 184 Cal. Rptr. 317, 133 Cal. App. 3d 832, 841 (Cal. Ct. App. 1982) (no valid claim where real estate developer's only "business relationship" was with a class of-as-yet unknown purchasers).

<u>Westside Center</u> is particularly instructive. There, the plaintiff strip mall owner sued the defendant anchor tenant for intentionally interfering with plaintiff's ability to sell the property to potential buyers. <u>Id.</u> at 523. The plaintiff could not demonstrate, however, the existence of an actual relationship between itself and some specifically identifiable third party that would have resulted in future economic advantage but for the defendant's actions. <u>Id.</u> at 527. Accordingly, the court rejected the plaintiff's "interference with the market" theory because there was no indication of an "existing relationship with an identifiable buyer." <u>Id.</u> at 523, 527. The plaintiff's allegations were "at most a hope for an economic advantage and a desire for future benefit." <u>Id.</u> at 524 (quotation omitted).

TYR's allegations are virtually identical to those in <u>Westside Center</u>. TYR alleges only that it "has an economic relationship with coaches, team dealers and athletes through which TYR was likely to benefit economically in the future." (Compl. ¶ 68.) These conclusory and self-serving statements fall squarely within the "interference with the market" theory that California courts have rejected. Rather than identify a specific person or persons that TYR would have benefited from in the absence of Speedo's alleged conduct, TYR makes blanket statements that Speedo drew broad classes of potential customers – coaches, team dealers, and athletes –

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

22

1 | away from TYR. TYR's allegations amount to nothing more than a "speculative
2 | expectation that a potentially beneficial relationship will eventually arise." Westside
3 | Center, 42 Cal. App. 4th at 524. This is insufficient to support a cause of action for
4 | interference with prospective economic advantage. Accordingly, the sixth cause of
5 | action for tortious interference with prospective economic advantage should be
6 | dismissed.

7 | **VII.   THE   EIGHTH   CLAIM   FOR   TRADE   LIBEL   SHOULD   BE**
8 | **DISMISSED.**

9 | TYR purports to assert a claim for "trade libel" under California law. Trade
10 | libel is defined as "an intentional disparagement of the quality of property, which
11 | results in pecuniary damage to plaintiff." Erlich v. Etner, 36 Cal. Rptr. 256, 224 Cal.
12 | App. 2d 69, 73 (Cal. Dist. Ct. App. 1964). Because the statements identified by
13 | TYR are all puffery and opinion, the trade libel claim fails for the same reasons as
14 | the purported false advertising claim. nSight, Inc., 2005 WL 1287553, at *2
15 | (dismissing trade libel claim as puffing for same reasons as false advertising claims)
16 | (citing Coastal Abstract, 173 F.3d at 730-31 (holding "puffery" by plaintiff's
17 | competitor not actionable under California defamation law)).

18 | In addition, TYR fails to satisfy the strict pleading requirement for special
19 | damages applicable to trade libel cases. A trade libel plaintiff must allege the
20 | specific sums lost. Erlich, 224 Cal. App. 2d at 74-75; Wright v. Coules, 87 P. 809, 4
21 | Cal. App. 343, 347 (Cal. Dist. Ct. App. 1906) (sustaining demurrer for failure to
22 | plead specific amount; allegation that damages were "at least the sum of $3000" not
23 | specific enough); Levy, Golden & Sacks, Cal. Business Torts, § 40.75 (Bender
24 | 1999) (plaintiff must "allege and prove the specific sum lost when the specific
25 | purchaser refused to trade"). TYR alleges only that it has "suffered damages in an
26 | amount to be proved at trial." (Compl. ¶ 78.) TYR's failure to allege a specific
27 | amount of supposed loss subjects this claim to dismissal.

28 |

**Katten**
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

23

## VIII. THE NINTH CLAIM FOR UNFAIR BUSINESS PRACTICES SHOULD BE DISMISSED.

As demonstrated above, the Complaint does not state a claim under the Sherman or Cartwright Acts.  Nor does it allege claims for trade libel or false advertising.  Finally, Plaintiff cannot save its Unfair Business Practices claim by alleging "unfair" conduct because Speedo's contracts with the other defendants are legal and well accepted in amateur athletics.  TYR's position that it is somehow "unfair competition" for Speedo to exclusively sponsor US Swimming is absurd. Far from being unfair, corporate sponsorship of U.S. national teams is absolutely legal and commonplace in the market.  See e.g., Fed'n Internationale De Football Ass'n v. Nike, Inc., 285 F. Supp. 2d 64, 66 (D.D.C. 2003) ("Nike is . . . the sponsor of the U.S. Women's National Soccer Team, which won the 1999 World Cup and is playing in the current competition.  Nike provides the team's uniforms, which prominently bear the company's famous Swoosh logo, as well as other equipment and clothing.").  The propriety of corporate sponsorship of national teams is beyond dispute.

In any event, the law is clear that Section 17200 does not give parties a vehicle to complain about the fairness of contracts.  Gregory v. Albertson's, Inc., 128 Cal. Rptr. 2d 389, 104 Cal. App. 4th 845, 856 (Cal. Ct. App. 2002) (demurrer to Section 17200 claim sustained and affirmed where the relief sought had the effect of putting "the court in the untenable position of making or approving commercial decisions without clear guidelines."); Samura v. Kaiser Found. Health Plan, Inc., 22 Cal. Rptr. 2d 20, 17 Cal. App. 4th 1284, 1299 n.6 (Cal. Ct. App. 1993) (invoking the term "unfair" under Section 17200 "does not give the courts a general license to review the fairness of contracts").

31433533v9 9/15/2008 7:36 PM

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

Since TYR's claims boil down to an allegation that Speedo's exclusive sponsorship contract with US Swimming is unfair to Speedo's competitors, there can be no "unfair, unlawful, or fraudulent" practices necessary under Section 17200.

The claim is also procedurally defective as the prayer seeks recovery of damages (Compl. ¶ 82; Prayer for Relief ¶ 5), which are not available under Section 17200. <u>Bank of the West v. Superior Court</u>, 2 Cal. 4th 1254, 1266 (Cal. 1992) (damages not recoverable).

## IX. THE TENTH CLAIM FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED.

Injunctive relief is a remedy, not a cause of action. <u>See</u> <u>Reuben H. Donnelley Corp. v. Mark I. Mktg. Corp.</u>, 893 F. Supp. 285, 293 (S.D.N.Y. 1995) (granting motion to dismiss on claim for injunctive relief because "there is no 'injunctive' cause of action"); <u>Noah v. Enesco Corp.</u>, 911 F. Supp 305, 307 (N.D. Ill. 1995) ("An injunction is a remedy, not a cause of action."). TYR must allege which of its defective claims might support this remedy.

## X. CONCLUSION.

For the foregoing reasons, Defendants respectfully request that the Court dismiss each claim for relief alleged in the Complaint.

Dated:   September 15, 2008

KATTEN MUCHIN ROSENMAN LLP
Stuart M. Richter
Zia F. Modabber
Gregory S. Korman

By: _____
        Stuart M. Richter
Attorneys for defendant WARNACO
SWIMWEAR, INC. dba SPEEDO USA

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

25

31433533v9 9/15/2008 7:36 PM