## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.   SACV 08-00529-JVS (MLGx)          Date   May 27, 2009

Title      TYR Sport Inc. v. Warnaco Swimwear Inc. Et al.

| Present: The Honorable | James V. Selna | |
|---|---|---|
| Lori Anderson | | Not Present |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

Proceedings:   (In Chambers) Order re Defendant Warnaco Swimwear, Inc.'s Motion to Dismiss Complaint (filed 09/15/08); Defendants US Swimming and Mark Schubert's Motion to Dismiss Complaint (filed 9/19/08) and Motion to Strike Speech-Related Claims (Anti-SLAPP)(filed 09/17/08)

Defendant Warnaco Swimwear, Inc. dba Speedo USA ("Speedo") moves the Court for an order dismissing the First through Fourth and Sixth through Tenth Claims asserted by Plaintiff TYR Sport, Inc. ("TYR") in the Complaint.[1] Defendants United States Swimming, Inc. and Mark Schubert ("Schubert") (collectively, "USA Swimming") move to dismiss the First, Third, and Sixth through Tenth Claims, and Speedo seeks to join this motion with respect to the First and Third Claims. Both motions are brought under Federal Rule of Civil Procedure 12(b)(6). Additionally, USA Swimming moves to strike the Third and Sixth through Tenth Claims under California Code of Civil Procedure Section 425.16 ("the anti-SLAPP statute").[2] TYR opposes these motions. The Court GRANTS IN PART AND DENIES IN PART the motions to dismiss, and DENIES the Anti-SLAPP motion.

## I.    BACKGROUND

TYR and Speedo both design and manufacture high-end swimwear and accessories sold to competitive swimmers. (Compl. ¶ 9.) The United States Olympic Committee ("USOC") recognizes USA Swimming as the national governing body ("NGB") of the

---

[1]    Claims as numbered in the body of the Complaint, rather than on the cover page.

[2]    "SLAPP" is an acronym for "Strategic Lawsuit Against Public Participation."

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-00529-JVS (MLGx)          Date   May 27, 2009

Title   TYR Sport Inc. v. Warnaco Swimwear Inc. Et al.

sport of swimming, per the Ted Stevens Amateur Sports Act ("Sports Act"), 36 U.S.C. § 220522.  (Id. ¶ 4.)  In 2006, USA Swimming hired Schubert to be the national and Olympic team head coach, though Schubert remained a paid spokesperson for Speedo. (Id. ¶¶ 14, 22.)

TYR alleges a combination between Speedo and USA Swimming that makes USA Swimming a de facto sales agent for Speedo.  (Id. ¶ 15.)  TYR specifically alleges as follows.  In exchange for payments from Speedo, USA Swimming agreed to act as a promoter for Speedo, and to make false statements that Speedo's products are "superior" and that its rivals' products are "inferior."  (Id. ¶¶ 15-17, 22.)  Notably, Schubert misled national team members by claiming that the Speedo suit, the LZR Racer ("LZR"), provides "a 2% advantage" over the equipment made by Speedo's rivals.  (Id. ¶ 16.) USA Swimming also agreed to alter images of sponsored athletes to remove logos of Speedo's competitors.  (Id. ¶ 11.)  USA Swimming refused Speedo's competitors the ability to advertise in the official NGB publication, Splash Magazine, and to sponsor USA Swimming-sanctioned meets or to post signs at meets.  (Id. ¶¶ 11-12.)  TYR further alleges that Speedo has falsely advertised its products to team dealers, who account for a large portion of competitive swimwear sales.  (Id. ¶¶ 28-32.)

Against this backdrop, TYR alleges ten claims for relief.  All of these claims are asserted against Speedo and USA Swimming together, except for the Second and Fourth Claims – alleged against Speedo alone – and the Fifth Claim – alleged against Erik Vendt ("Vendt").  (Id. ¶¶ 35-86.)  Presently before the Court are (1) the defendants' 12(b)(6) motions to dismiss, and (2) an anti-SLAPP motion to strike speech-related claims.  The Court will address each issue in turn.

## II.   MOTIONS TO DISMISS

### A.   Legal Standard

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted.  A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- S. Ct. ----, 2009 WL 1361536, at *12 (May 18, 2009).  In

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-00529-JVS (MLGx)                    Date   May 27, 2009

Title   TYR Sport Inc. v. Warnaco Swimwear Inc. Et al.

resolving a 12(b)(6) motion under <u>Twombly</u>, the Court must follow a two-pronged approach.  First, the Court must accept all well-plead factual allegations as true, but "[t]hread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u> at *13.  Nor must the Court "accept as true a legal conclusion couched as a factual allegation."  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief."  <u>Id.</u>  This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  <u>Id.</u>

Because factual challenges have no bearing under Rule 12(b)(6), generally speaking, the Court may not consider material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim.  There are, however, two exceptions to this general rule which do not demand converting the motion to dismiss into one for summary judgment.  <u>Lee</u> v. <u>City</u> of <u>Los</u> <u>Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001).  First, a court may consider material that is either attached to the complaint or material upon which the complaint relies, provided the material's authenticity is not contested.  <u>Id.</u>  Second, under Federal Rule of Evidence 201, the Court may take judicial notice of matters of public record if the facts are not subject to reasonable dispute.  <u>Id.</u>

B.   <u>Discussion</u>

The Court considers two 12(b)(6) motions, one brought by Speedo, the other by USA Swimming.  Because of significant overlap between these motions, the Court treats them here together.  To extent they are based on divergent grounds, Speedo seeks to join USA Swimming's motion with respect to the First and Third Claims.  The Court considers the challenged claims sequentially, as set forth below.

1.   <u>Federal</u> <u>and</u> <u>State</u> <u>Antitrust</u> <u>Claims</u> (First through Third Claims)

i.   <u>Speedo's</u> <u>Motion</u>

TYR alleges the First and Second Claims under the Sherman Act, Sections 1 and 2, respectively, 15 U.S.C. §§ 1 & 2; and the Third Claim under the Cartwright Act, Cal. Bus & Prof. Code §§ 16720, <u>et</u> <u>seq.</u>  Speedo contends that the federal antitrust claims should

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 08-00529-JVS (MLGx) | Date | May 27, 2009 |

| | |
|---|---|
| Title | TYR Sport Inc. v. Warnaco Swimwear Inc. Et al. |

be dismissed because TYR has failed to (1) plead facts necessary to define a relevant market; (2) show that Speedo has done anything to foreclose competition in any relevant market; (3) establish that it meets the stringent test in the Ninth Circuit for establishing antitrust liability based on a defendant's advertising and promotional statements; and (4) show that it has suffered injury in fact and antitrust injury. Speedo asserts that the state antitrust claim fails for the same reasons. The Court finds these arguments unavailing.

For purposes of this motion, the Court must construe the Complaint in the light most favorable to TYR, and accept TYR's well-pleaded factual allegations as true. Iqbal, 2009 WL 1361536, at *13; see also Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). The Court therefore rejects Speedo's attempt to bifurcate the antitrust claims by treating Speedo's sponsorship of USA Swimming separately from Speedo's and Schubert's promotion of the LZR swimsuit. The Court also rejects Speedo's attempt to analogize these claims to monopoly leveraging. Instead, the Court accepts TYR's broader claim that Speedo has bought not only exclusive access to USA Swimming, which has agreed to exclude or limit Speedo's competitors from participating in official functions and from advertising in Splash Magazine, but also USA Swimming's affirmative and exclusive endorsement of Speedo's products. (Compl. ¶¶ 11-16.) TYR further alleges that USA Swimming disparaged the products of Speedo's competitors with no factual basis to do so. (Id. ¶¶ 13-16, 22-23.)

On this basis the Court turns to the question of whether TYR's antitrust claims allege a legally cognizable "relevant market." To state a valid claim under the Sherman Act,[3] TYR must allege both that a relevant market exists and that the defendants have power within that market. Newcal Indus. Inc. v. Ikon Office Solution, 513 F.3d 1038, 1044 (9th Cir. 2008). The Court finds no requirement that these elements be pled with specificity here. Id. at 1045. As the Ninth Circuit recently explained,

---

[3]    Section 1 of the Sherman Act, 15 U.S.C. § 1, governs restraints of trade, and Section 2 of the Sherman Act, 15 U.S.C. § 2, governs monopolization and attempted monopolization. The "relevant market" and "market power" requirements apply identically under the two different sections of the Act, such that the requirements apply identically to the First and Second Claims. Compare Rebel Oil Co., Inc. v. Atlantic Richfield Co., 51 F.3d 1421, 1444 (9th Cir. 1995) (restraint of trade), with Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 481 (1992) (monopolization).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-00529-JVS (MLGx) | Date | May 27, 2009 |
|---|---|---|---|

| Title | TYR Sport Inc. v. Warnaco Swimwear Inc. Et al. |
|---|---|

> [a]n antitrust complaint . . . survives a Rule 12(b)(6) motion unless it
> is apparent from the face of the complaint that the alleged market
> suffers a fatal legal defect.  And since the validity of the "relevant
> market" is typically a factual element rather than a legal element,
> alleged markets may survive scrutiny under Rule 12(b)(6) subject to
> factual testing by summary judgment or trial.

Id.  Under the circuit's precedent in Big Bear Lodging Association v. Snow Summit, Inc.,
182 F.3d 1096, 1104-05 (9th Cir. 1999), TYR "must identify the relevant geographic and
product markets in which [the parties] compete and allege facts demonstrating that
Defendants' conduct has an anticompetitive effect on those markets."  TYR alleges that
the relevant product market is for "high-end competitive swimwear and accessories . . .
sold to competitive swimmers in the professional, collegiate, high school and club ranks,"
and that the relevant geographic market "consists of the entire United States and its
territories."  (Compl. ¶ 9.)

Speedo contends that this market definition is legally insufficient at the pleading
stage because it contains no allegations regarding interchangeability or cross-elasticity of
demand.[4]  Speedo cites Big Bear for this proposition.  But Big Bear merely requires that
the alleged market constitutes "the area of effective competition in which buyers of these
products can find alternative sources of supply [and] that there are no other [products]
that are reasonably interchangeable . . . within this geographic market."  182 F.3d at
1105.  Applying this standard, the Court reads the Complaint in the light most favorable
to TYR, and finds that TYR properly alleges an "area of effective competition" within a
geographic market where there are no "reasonably interchangeable" products.

TYR's definition of the market as "high-end competitive swimwear," coupled with
the allegation that purchasers in the market are "competitive swimmers in the
professional, collegiate, high school and club ranks" is sufficient to state a relevant

---

[4]   The Second Circuit provides a useful explanation of these
terms: "In economists' terms, two products or services are
reasonably interchangeable where there is sufficient
cross-elasticity of demand.  Cross-elasticity of demand exists if
consumers would respond to a slight increase in the price of one
product by switching to another product."  AD/SAT, Div. of
Skylight, Inc. v. Associated Press, 181 F.3d 216, 227 (2d Cir.
1999).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-00529-JVS (MLGx) | Date | May 27, 2009 |
|---|---|---|---|

| Title | TYR Sport Inc. v. Warnaco Swimwear Inc. Et al. |
|---|---|

product market.  (Compl. ¶ 9.)  On the face of the Complaint, it seems plausible that competitive swimmers would not switch to casual swimsuits simply because of a price increase in high-end swimwear.  This factual implication is further supported by the allegation that competitive suits cost between $400 and $500.  (Id. ¶ 34.)  Moreover, TYR's definition of the relevant product market is well-recognized in the industry, a fact supported by Speedo's own evidence.  (See Speedo's Req. for Jud. Notice, Ex. C ("[The LZR is] not a fashion garment[;] it's a performance garment.") (quoting Schubert) (emphasis supplied); see also USA Swimming's Req. for Jud. Notice, Ex. C ("[T]he Speedo LZR . . . has broken new boundaries in performance swimwear and . . . will help elite athletes achieve their ultimate performances in 2008.") (emphasis supplied).)

Similarly, TYR properly pleads the United States as the relevant geographic market.  The Court notes that the Complaint specifically alleges that industry participants, such as Adidas and Arena, recognize the United States as a distinct geographic market for competitive swimwear.  (Compl. ¶ 9.)  TYR further alleges that those competitors recently exited the market in the United States.  (Id.)  Since high-end swimwear is not reasonably interchangeable with casual swimsuits, as set forth above, this is sufficient to state a relevant geographic market.  The foregoing is facially plausible under Twombly and Iqbal.

The Court is also persuaded that the Complaint can be construed to allege an anticompetitive combination or conspiracy between a market participant and an ostensibly neutral party.  USA Swimming, for which Schubert works, is the NGB of swimming.[5]  Hence, the case can be analogized to American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp., 456 U.S. 556 (1982), where a manufacturer of low-water fuel cutoffs for boilers brought an antitrust action against a nonprofit trade association which promulgated codes and standards for the industry.  Although the

---

[5]   Courts that have discussed an NGB's influence over its sport have used the term "monolithic control" rather than "monopoly" to describe the relationship.  See JES Properties, Inc. v. USA Equestrian, Inc., 458 F.3d 1224, 1231-32 (11th Cir. 2006); Eleven Line, Inc. v. North Texas State Soccer Ass'n, Inc., 213 F.3d 198, 204 (5th Cir. 2000); Behagen v. Amateur Basketball Ass'n of U.S., 884 F.2d 524, 529 (10th Cir. 1989).  Partly for this reason, Speedo's attempt to characterize this matter as a two-market case fails, and TYR need not define a second market. The liberal standard for 12(b)(6) motions, albeit heightened under Twombly and Iqbal, also compels this finding.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-00529-JVS (MLGx)                    Date   May 27, 2009

Title   TYR Sport Inc. v. Warnaco Swimwear Inc. Et al.

association's codes and standards were only advisory, they had "powerful influence" among designers of heating and boiler systems.  Id. at 559.  A competitor's employee, who also served in the association, prepared an "unofficial communication" on association letterhead, suggesting that the manufacturer's product was unsafe.  Id. at 561. The association later approved the opinion letter without verifying its accuracy.  As a result, the manufacturer "suffer[ed] from market resistance" to its product.  Id. at 563-64. The Supreme Court found that the competitor "successfully used its position within [the association] . . . to thwart [the manufacturer's] competitive challenge," and held the competitor liable under Section 1 of the Sherman Act.  Id. at 562.

While much of the discussion in Hydrolevel is devoted to agency and immunity principles, it is clear that the Supreme Court recognized a species of Section 1 conspiracies involving an industry participant and an ostensibly neutral party.[6]  This case closely parallels Hydrolevel in a number of respects – an alleged conspiracy between a market participant (Speedo) and a third party (USA Swimming) which is in a position to greatly influence the relevant market as an NGB; an individual (Schubert) who represents the market participant also holds a dual position with the third party; the market participant allegedly used its infiltration of the third party to manipulate the relevant market for the benefit of the market participant; and the manipulation was carried out by dissemination of seemingly technical but allegedly false information in the marketplace suggesting that competitive products were inferior or unsuitable.

At oral argument, Speedo placed great weight on Chief Judge Easterbrook's decision in Schachar v. American Academy of Ophthalmology, Inc., 870 F.2d 397 (7th Cir. 1989).  Schachar and the other plaintiff ophthalmologists contended that they had sustained antitrust injury because the Academy had labeled their use of radial keratotomy "experimental."  (Id. at 399.)  However, the court found that:

"[The Academy] did not require its members to desist from performing the operation or associating with those who do.  It did not expel or discipline or

--------

[6]   Section 1 of the Sherman Act prohibits a "contract, combination . . ., or conspiracy" in restraint of trade.  15 U.S.C. § 1.  The "conspiracy" rationale in Hydrolevel does not rest on a monopoly leveraging theory, as the "neutral" party's influence in the market does not derive from a separate, or upstream, market.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-00529-JVS (MLGx)                    Date   May 27, 2009

Title   TYR Sport Inc. v. Warnaco Swimwear Inc. Et al.

> even scowl at members who performed radial keratotomies.  It did not
> induce hospitals to withhold permission to perform the procedure, or
> insurers to withhold payment; it has no authority over hospitals, insurers,
> state medical societies or licensing boards, and other persons who might be
> able to govern the performance of surgery.

(Id. at 398; emphases supplied.)  Moreover, the plaintiffs conceded that the  "Academy did not attempt to coordinate activities with these groups, actors independent of the Academy."

These facts caused Chief Judge Easterbrook to question at the outset of the opinion whether there was any restraint that constituted a restraint of trade.  (Id. at 397.)  At most, he found a series of potentially false or misleading statements that should be left to the marketplace.  (Id. at 400.)  At most, the Academy's statement had affected the demand side, but had not constrained the supply side.

If the facts alleged here established no more than an unfair vilification of TYR's products, the Court would agree that Schachar  presents convincing authority to reject TYR's antitrust claims.  But there is more.  The Complaint alleges that Schubert went beyond criticism and threatened athletes who chose to wear the TYR product:

> • "I would strongly advise them to wear the [Speedo] at trials, or they may end up at home watching [the Olympics] on NBC."  (Complaint, ¶ 16(l).

> • "Schubert has gone so far as to suggest that he will use his authority as Head Coach to mandate use of SPEEDO equipment."  (Id., ¶ 16(e).)  He was reported as stating that he will tell his team to wear Speedo at the U.S. Trials.  (Id.)

> • "Some athletes (including Defendant VENDT) have followed through on SCHUBERT's recommendation that they breach contracts with their equipment providers in order to avoid 'staying home' during the Olympic Games."  (Id., ¶ 33.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-00529-JVS (MLGx)                Date   May 27, 2009

Title   TYR Sport Inc. v. Warnaco Swimwear Inc. Et al.

Read in the light most favorable to TYR,[7] these allegations support a claim that Schubert used his position to coerce swimmers to wear Speedo swimsuits or face being left home for the Olympics.  To be sure, the facts here are different from <u>Hyrdolevel</u> where a trade group's standard had the <u>de facto</u> force of law.  But the same impermissible element of coercion is present where Schubert sets the standard (Speedo) and then enforces it by threatening to remove swimmers from the Olympics.  The exclusionary anticompetitive effect on TYR directly parallels the effect on the plaintiff cut-off valve manufacturer in <u>Hydrolevel</u>.

Construing allegations in the light most favorable to TYR, the Court finds that the Section 1 claim need not be a monopoly leveraging claim, and thus TYR need not plead a second market.  Nor must TYR plead a second market to survive a 12(b)(6) motion on the Section 2 claim.[8]

Finally, Speedo contends that TYR has failed to adequately plead an antitrust injury and disparagement.  The Court disagrees.  Speedo incorrectly asserts that TYR has failed to allege any facts linking its claimed injury in the swimwear market to Speedo's alleged anticompetitive conduct.  Speedo's only cited cases for this proposition is <u>Alaska Airlines, Inc. v. United Airlines, Inc.</u>, 948 F.2d 536, 545 (9th Cir. 1991).  But <u>Alaska Airlines</u> is not directly on point.  <u>Id.</u> at 545 n.12 ("Monopoly control of the upstream market is a necessary element of essential facility and monopoly leveraging claims.").  More relevant here is the finding that one "form of antitrust injury is coercive activity that prevents its victims from making free choices between market alternatives."  <u>Amarel v. Connell</u>, 102 F.3d 1494, 1509 (9th Cir.1996) (internal quotation marks and brackets omitted); <u>accord</u> <u>Glen Holly Entm't, Inc. v. Tektronix, Inc.</u>, 352 F.3d 367, 374 (9th Cir. 2003).  Favorably read, the Complaint alleges a combination between Speedo and USA Swimming to exert coercive pressure on consumers in the relevant market to choose

---

[7]   While Schubert's remarks could be read to mean that swimmer who do not wear Speedo are making poor equipment choices that may make them less competitive, and hence left behind for that reason, the Court is required to adopt the gloss most favorable to TYR – not the defendants.  <u>Cahill</u>, 80 F.3d at 337-38.

[8]   <u>See</u> <u>supra</u> note 5.  The liberal standard for 12(b)(6) motions dictates that the Section 2 claim cannot be cast exclusively in terms of an essential facilities claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 08-00529-JVS (MLGx) | Date | May 27, 2009 |

| | |
|---|---|
| Title | TYR Sport Inc. v. Warnaco Swimwear Inc. Et al. |

Speedo's product, the LZR.

Speedo also contends that allegations of disparaging statements by Speedo and Schubert about TYR's products do not overcome the presumption that such statements have a de minimis effect on competition, as set forth in American Professional Testing Service, Inc. v. Harcourt Brace Jovanovich Legal, 108 F.3d 1147 (9th Cir. 1997). TYR counters that Harcourt Brace is inapposite here. The Court agrees. The de minimis presumption rests on the Ninth Circuit's reasoning that "buyer distrust of a seller's disparaging comments about a rival seller should caution us against attaching much weight to isolated examples of disparagement." Id. at 1152. But that reasoning is not implicated in this case. TYR alleges that the use of Schubert to make the disparaging statements gives the appearance of objectivity and lack of bias. (Complaint ¶ 17.) The Court takes this factual allegation as true, and agrees that it is plausible on its face. Even if Schubert's connection to Speedo is generally known, his coaching position may well have given him added credibility, which he otherwise would not have enjoyed speaking solely in his capacity as a Speedo spokesperson. This fact alone negates the applicability of the de minimis presumption here.

Based on a favorable reading of the Complaint, the Court is also persuaded that TYR's allegations are in line with the Harcourt Brace factors even if they do apply: "A plaintiff may overcome de minimis presumption by cumulative proof that the representations were (1) clearly false, (2) clearly material, (3) clearly likely to induce reasonable reliance, (4) made to buyers without knowledge of the subject matter, (5) continued for prolonged periods, and (6) not readily susceptible of neutralization or other offset by rivals." 108 F.3d at 1152 (internal quotation marks omitted). For purposes of this motion, the Court finds that TYR properly pleads that the disparaging statements are "provably false" (Compl. ¶ 23); that Schubert essentially told the national team that the Speedo LZR could be the difference between making the Olympic team or staying home (id. ¶ 16(l)); that the swimmers who heard Schubert were likely persuaded (id. ¶ 17); that athletes had no way of knowing that Schubert's claims of a "2% advantage" were false (id. ¶¶ 16(k), 17-18); that Schubert's disparaging statements began at least in September 2007 and continued at least through April 2008 (id. ¶¶ 16(a)-(I)); and that Schubert's position as Olympic team head coach gives his statements "a degree of credibility that would never attach to statements made by equipment manufacturers" (id. ¶ 17).

Therefore, the Court cannot dismiss TYR's federal and state antitrust claims based

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-00529-JVS (MLGx) | Date | May 27, 2009 |
|---|---|---|---|

| Title | TYR Sport Inc. v. Warnaco Swimwear Inc. Et al. |
|---|---|

on Speedo's motion.

ii.    <u>USA</u> <u>Swimming's</u> <u>Motion</u>

The Court next turns to USA Swimming's motion, to which Speedo seeks to join.[9] Favorably construing the federal and state antitrust claims, the Court finds that TYR's allegations do not fall within the ambit of the Sports Act, 36 U.S.C. § 220501, <u>et</u> <u>seq.</u> Nor does the Sports Act provide implied immunity for the alleged combination or conspiracy between Speedo and USA Swimming.

USA Swimming first contends that the entire Complaint should be dismissed because its "gravamen" is that USA Swimming has violated the Sports Act.  This is simply not the case.  Rather, the gravamen of the Complaint is that Speedo and USA Swimming conspired to restrain trade in violation of the Sherman Act and analogous provisions of the Cartwright Act, and to commit various state law torts. This finding is apparent on the face of the Complaint, especially when read in the light most favorable to TYR.  Therefore, because TYR does not allege a Sports Act violation, whether the Act provides a private right of action is beside the point.

USA Swimming next contends that it has implied immunity under the Sports Act, as applied to federal and state antitrust laws.  To establish its implied immunity in this case, USA Swimming primarily relies on persuasive authority from the Eleventh Circuit in <u>JES</u> <u>Properties,</u> <u>Inc.</u> <u>v.</u> <u>USA</u> <u>Equestrian,</u> <u>Inc.</u>, 458 F.3d 1224 (11th Cir. 2006).  But <u>JES</u> <u>Properties</u> is not controlling.

To begin with, implied immunity is strongly disfavored in the antitrust context.  In <u>Carnation</u> <u>Co.</u> <u>v.</u> <u>Pac.</u> <u>Westbound</u> <u>Conference</u>, the Supreme Court made clear that

> [r]epeals of the antitrust laws by implication from a regulatory statute are <u>strongly</u> <u>disfavored</u>, and have only been found in cases of plain repugnancy between the antitrust and regulatory provisions.  We have long recognized that the antitrust laws represent a fundamental national economic policy and have therefore concluded that we cannot

---

[9]    The Court need not decide Speedo's joinder, here or elsewhere, because it makes no difference as to the outcome.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-00529-JVS (MLGx) | Date | May 27, 2009 |
|---|---|---|---|

| Title | TYR Sport Inc. v. Warnaco Swimwear Inc. Et al. |
|---|---|

lightly assume that the enactment of a special regulatory scheme for
particular aspects of an industry was intended to render the more
general provisions of the antitrust laws wholly inapplicable to that
industry.

383 U.S. 932, 217-18 (1966) (internal quotation marks and citation omitted) (emphasis
supplied).  Indeed, "[i]t is a cardinal principle of construction that repeals by implication
are not favored."  United States v. Borden Co., 308 U.S. 188, 198 (1939).  The proper
analysis of whether a statute impliedly repeals the Sherman Act is set out by the Supreme
Court in a number of cases.  In the federal securities context, Silver v. New York Stock
Exchange affirmed the baseline principle that repeal of the antitrust laws is to be "implied
only if necessary to make th[e] Act work, and even then only to the minimum extent
necessary."  373 U.S. 341, 357 (1963); accord Mt. Hood Stages, Inc. v. Greyhound Corp.,
555 F.2d 687, 692 (9th Cir. 1977).  Silver involved an antitrust challenge to an order,
issued by the New York Stock Exchange pursuant to its constitution and existing rules,
requiring its members to remove any private direct telephone connections they had with
offices of nonmember firms.  Because the Securities and Exchange Commission lacked
the authority to regulate the challenged conduct, the Court concluded there was no
potential for the antitrust laws to overlap or conflict with the regulatory power of the
Commission.  See Silver, 373 U.S. at 358.

        In Carnation Co., the Supreme Court similarly held that shipping rates not
approved by the Federal Maritime Commission were not immune from antitrust laws.
Section 15 of the Shipping Act provided for an explicit exemption of
approved rate agreements from the Sherman and Clayton Acts.  According to the Court,

        [t]his express provision covers approved agreements, which are lawful
        under § 15, but does not apply to the implementation of unapproved
        agreements, which is specifically prohibited by § 15.  The creation of
        an antitrust exemption for rate-making activities which are lawful
        under the Shipping Act implies that unlawful rate-making activities
        are not exempt.

Carnation Co., 383 U.S. at 216-17.  The reasoning in these cases can be extended here.
First, as in Silver, there is no apparent conflict or tension between the various
requirements under the Sports Act and application of the antitrust laws to this case.  USA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-00529-JVS (MLGx)                    Date   May 27, 2009

Title   TYR Sport Inc. v. Warnaco Swimwear Inc. Et al.

Swimming asserts that, as an NGB, it is required under the Sports Act to "keep amateur athletes informed of policy matters and reasonably reflect the views of the athletes in its policy decisions," 36 U.S.C. §220524(3); and "provide and coordinate technical information on physical training, <u>equipment design</u>, coaching, and performance analysis," <u>id.</u> § 220524(8) (emphasis supplied). But nothing in the antitrust laws affects or conflicts with these duties, and based on a favorable reading of the Complaint, these duties are not at issue here. Rather, TYR alleges that USA Swimming engaged in an entirely separate set of activities – acting as a promoter of Speedo products; making false statements that Speedo's products are "superior" and that its rivals' products are "inferior"; and altering images of sponsored athletes to remove logos of Speedo's competitors. (Compl. ¶¶ 11, 15-17, 22.) Favorably construed, the Complaint alleges not that Schubert informed athletes about equipment, but rather that he deceived them by making statements with no factual basis. (<u>Id.</u>)

USA Swimming further asserts that the USOC Bylaws require it to "actively seek . . . to generate revenue" through sponsorships. (USA Swimming's Req. for Jud. Notice, Ex. A, USOC Bylaws § 8.7(k).) USA Swimming cites persuasive authority from the Second Circuit for the proposition that the ability to offer exclusive rights to corporate sponsors is fundamental to the Olympic movement. <u>See</u> <u>U.S. Olympic Committee v. Intelicense Corp., S.A.</u>, 737 F.2d 263, 266 n.3 (2d Cir. 1984). But the Complaint, favorably read, does not challenge Speedo's sponsorship of USA Swimming, per se, but rather the nature of that sponsorship – hiring a Speedo spokesperson to coach the national and Olympic teams, and allowing Schubert to call mandatory meetings and push Speedo's products. Indeed, USA Swimming cites no authority in the Sports Act or elsewhere to suggest that it is authorized to enter into a combination or conspiracy with Speedo in violation of federal and state antitrust laws, as alleged here. Moreover, whatever remedies may exist under the Sports Act (USA Swimming's Mot. at 13-15), they are neither exclusive nor inconsistent with recognition of federal and state antitrust claims.

Accordingly, USA Swimming's reliance on <u>JES Properties</u> is misplaced. That case involved a rule promulgated by the NGB of amateur equestrianism, which prohibited the scheduling of any two officially sanctioned, "A-rated" events within 250 miles of each other on the same day. 458 F.3d at 1226-27. Unable to schedule events as a result of the rule, plaintiffs lost business and sued the NGB, among others, for violations of the Sherman Act. Defendants argued that because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-00529-JVS (MLGx)                    Date   May 27, 2009

Title   TYR Sport Inc. v. Warnaco Swimwear Inc. Et al.

the claims were based on a rule promulgated by an NGB, they were entitled to implied immunity. The Eleventh Circuit agreed, stating that "when properly exercised, the 'monolithic control' a NGB has over its particular sport may excuse actions that would otherwise violate antitrust laws." Id. at 1230-31 (emphasis supplied). The compelling factor was "whether the application of the antitrust laws . . . would 'unduly interfere' with the 'operation' of the [Sports Act]." Id. at 1231. The Court agrees with TYR that JES Properties does not control here. Favorably construed, this case does not involve the promulgation of a rule, but rather a pattern of commercial conduct aimed at selling products for a corporate sponsor. While USA Swimming may dispute the merits of these allegations, they are well-pled and must be taken as true for purposes of this motion.

Therefore, implied immunity cannot be extended from the face of the pleading.[10]

Finally, the Court finds no merit to USA Swimming's argument that a Section 1 conspiracy somehow requires all members to be "market participants." This is not the law. USA Swimming mistakenly cites The Jeanery, Inc. v. James Jeans, Inc., for this proposition. 849 F.2d 1148, 1160 (9th Cir. 1988) ("[T]o establish an agreement it takes two to tango.") (emphasis supplied). That opinion says nothing about any requirement in Section 1 that conspirators must all be market participants. Instead, this Court has already found that, under Hydrolevel Corp., supra, a single market participant can conspire with a nonparticipant to restrain trade. Equally unavailing is USA Swimming's argument that a non-participant cannot benefit from the creation of a monopoly in the relevant market. TYR correctly points out that the Fifth Circuit has considered and rejected this argument. In Spectators' Communication Network Inc. v. Colonial Country Club, 253 F.3d 215 (5th Cir. 2001), the plaintiff was a provider of on-site broadcasting services at golf tournaments. Plaintiff filed a Section 1 claim alleging that the PGA conspired with others, including Anheuser-Busch, to take over the market for on-site golf broadcasts. Anheuser-Busch made the same argument USA Swimming now makes,

---

[10] Eleven Line, Inc. v. Permian Basic Sports Ctr., 213 F.3d 198 (5th Cir. 2000), and Behagen v. Amateur Basketball Ass'n, 884 F.2d 524 (10th Cir. 1989), as persuasive authority, also weigh heavily against USA Swimming on this issue. The analysis for these cases, as set forth in TYR's opposition, is similar to that of JES Properties and will not be repeated here. Suffice it to say that USA Swimming does not articulate a convincing rationale for why the factual allegation of an anticompetitive conspiracy with Speedo has any relation to its function as an NGB.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-00529-JVS (MLGx) | Date | May 27, 2009 |
|---|---|---|---|

| Title | TYR Sport Inc. v. Warnaco Swimwear Inc. Et al. |
|---|---|

which the Fifth Circuit flatly rejected:

> an integral part of a boycott is often bringing pressure to bear
> ("persuading or coercing") on other participants who have no direct
> motive to restrain trade. Conspirators who are not competitors of the
> victim may have no interest in curtailing competition in a market in
> which they do not compete; nevertheless, when they have been
> enticed or coerced to share in an anticompetitive scheme, there is still
> a combination within the meaning of the Sherman Act.

Id. at 221. The Fifth Circuit went on to hold that "even though it was not directly in
Anheuser-Busch's interest to eliminate competition in the market for on-site advertising
at tournaments, other facts in this record made it economically plausible for
Anheuser-Busch to participate in a combination fomented by the PGA." Id. at 222.
Here, TYR specifically alleges that USA Swimming had an economic motive to join in
Speedo's conspiracy – "the substantial financial contributions Speedo makes to USA
Swimming." (Compl. ¶ 11.) TYR further alleges that Schubert is paid directly by both
USA Swimming and Speedo, giving him a direct financial incentive to participate in the
conspiracy. (Id. ¶¶ 14, 22.)

Accordingly, the Court denies both 12(b)(6) motions as to the federal and state
antitrust claims. TYR has properly pled these claims as to both Speedo and USA
Swimming, neither of which has immunity against these allegations under the Sports Act.

2.      False Advertising Claim (Fourth Claim)

TYR alleges the Fourth Claim for false advertising under the Lanham Act, 15
U.S.C. § 1125(a), solely against Speedo. Speedo contends that this federal claim should
be dismissed because (1) Schubert's statements and Speedo's claims are mere "puffery"
and hence not actionable under the Act; and (2) Schubert's statements are protected by
the First Amendment. Because these arguments are not true of all TYR's allegations, the
Court cannot dismiss this claim in its entirety. However, only a few allegations,
favorably read, survive here.

For purposes of a false advertising claim under the Lanham Act, the Court notes
that "[p]uffing is exaggerated advertising, blustering, and boasting upon which no

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-00529-JVS (MLGx)          Date   May 27, 2009

Title      TYR Sport Inc. v. Warnaco Swimwear Inc. Et al.

reasonable buyer would rely." Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997) (internal quotation marks omitted).  "A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance.  Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim." Newcal Indus., Inc., 513 F.3d 1038, 1053 (9th Cir. 2008).  Puffery is not actionable under the Lanham Act.  Southland Sod Farms, 108 F.3d at 1145.  Most of TYR's allegations fall within this category.

However, TYR correctly submits that "[a] specific and measurable advertisement claim of product superiority based on product testing is not puffery."  (Id.)  This is so because a numerical comparison "gives the impression that the claim is based upon independent testing." Id.  TYR then asserts that Schubert's statements go well beyond puffery.  The Court disagrees.  Even as to the two allegations that survive dismissal, this claim is an overstatement – both involve close cases.

The Court first considers Schubert's statements.  All of TYR's allegations here amount to mere puffery, save for one.  The following are instances of puffing, even when construed in the light most favorable to TYR:

• Schubert "advocated the virtues of Speedo's elite swimsuit technology and the results at the 2007 World Swimming Championships held in Melbourne, Australia," presented a "segment advocating the upcoming new Speedo LZR technology," and stated that "Speedo was far ahead of all of its competitors in swimsuit technology." (Compl. ¶¶ 16(a), (b).)  These claims are nonspecific, and no different from "better than" statements, the "most innocuous" form of puffing.  See U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 926 (3d Cir. 1990).

• Schubert has "label[ed] criticism a case of sour grapes instigated by other swimsuit manufacturers."  (Compl. ¶ 16( d).)  This statement is not a representation of fact about any product, and hence cannot constitute false advertising.  See Boule v. Hutton, 70 F. Supp. 2d 378, 388 (S.D.N.Y. 1999).  Moreover, it may be protected speech on a matter of public concern.  See Gertz v. Robert Welch, Inc.,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-00529-JVS (MLGx)                    Date   May 27, 2009

Title   TYR Sport Inc. v. Warnaco Swimwear Inc. Et al.

418 U.S. 323 (1974).[11]

• Schubert stated that: (1) he "will tell his team to wear Speedo at the US Trials ,"(2) "we will go so far as to recommend every American wear the Speedo suit at the Olympic trials in June . . . even if they are sponsored by another company," and (3) "I would strongly advise them to wear the [Speedo] swimsuit at trial, or they might end up at home watching on NBC." (Compl. ¶¶ 16(e), (h), (*l*).) None of these are statements of fact, and since each merely reflects what Schubert would do in the future, they are not actionable.

• Schubert stated that "US Swimmers who were using another brand than Speedo had backed the wrong horse . . . ," and swimmers not wearing Speedo suits "are contracted to an inferior product. . . ." (Id. ¶¶ 16(f), (g).) These statements are classic opinions. See Global Telemedia Intern., Inc. v. Doe 1, 132 F. Supp. 2d 1261, 1267 (C.D. Cal. 2001) (statement that company is a "sinking ship" is opinion); nSight. Inc. v. PeopleSoft. Inc., No. 04-3836, 2005 WL 1287553, *1 (N.D. Cal. June 1, 2005) (dismissing as puffing false advertising claim that competitor's services were "inferior").

• Schubert stated: "My advice to athletes is, 'You have a black and white decision – the money (which comes from swimmers sticking with their current sponsorship deal) or the Gold Medal.' And it's going to be a real test as to what choice they make. There is one manufacturer that's put millions into research while others are more into fashion." (Compl. ¶¶ 16(I), (j).) TYR does not dispute that Speedo has put million into research, and the remaining statements do not plead actionable false advertising because there is no measurable way to determine their validity.

Pursuant to Federal Rule of Evidence 201(b), the Court takes judicial notice of the fact that Schubert's relationship with Speedo is well-known among competitive swimmers and coaches.[12] Therefore, TYR's non-disclosure claim is not plausible on its

---

[11]   The Court need not decide this matter, but notes that TYR alleges that this is unprotected commercial speech.

[12]   A number of news articles from which TYR has extracted Schubert's allegedly false statements also contain quotes by Schubert disclosing his role as a paid consultant for Speedo.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-00529-JVS (MLGx)               Date   May 27, 2009

Title   TYR Sport Inc. v. Warnaco Swimwear Inc. Et al.

face.  In any event, the mere fact that Schubert, by virtue of his position, is viewed as an authority does not make his opinions actionable under the Lanham Act.  See Gordon & Breach Sci. Publishers. S.A. v. Am. Inst. of Physics, 859 F. Supp. 1521, 1542 & n.9 (S.D.N.Y. 1994).

Notwithstanding these findings, TYR does state a plausible claim under the Lanham Act when it alleges that Schubert stated that the Speedo LZR gave swimmers "a 2% advantage."  (Compl. ¶ 16(c), (k).)  The allegation itself is unambiguous – a 2% advantage "over the suits of competitors." (Id. ¶ 16(k).)  Any remaining ambiguity is resolved by reading the allegation in the light most favorable to TYR.  This is precisely the kind of claim the Ninth Circuit held to be actionable, as non-puffery, in Southland Sod Farms.  There, the circuit considered claims by a group of sod manufacturers that their product (Bonsai) required "50% less mowing."  A competitor sued for false advertising under the Lanham Act.  The circuit held:

> The "50% Less Mowing Claim," on the other hand, is a specific and measurable advertisement claim of product superiority based on product testing and, as such, is not puffery.  While the district court found it to be puffery because it does not compare Bonsai to any specific competitor by name, "there need not be a direct comparison to a competitor for a statement to be actionable under the Lanham Act."

108 F.3d at 1145 (quoting Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 946 (3d Cir. 1993).  And because TYR alleges that Schubert's statements purported to be factual and not mere opinions, and were false or misleading commercial speech, Speedo's First Amendment argument fails here.  See, e.g., P&G v. Amway Covp., 242 F.3d 539, 549 (5th Cir. 2001).  Thus, TYR's allegation of a "2% advantage" is sufficient for pleading purposes.

The Court next considers Speedo's promotional materials.  Here, TYR's allegations are actionable.  TYR does state a proper claim under the Lanham Act when it alleges that:

• Speedo sent team dealers promotional materials that "understated the number of

---

(Speedo's Req. for Jud. Notice, Exs. A, C & D.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-00529-JVS (MLGx)                    Date   May 27, 2009

Title      TYR Sport Inc. v. Warnaco Swimwear Inc. Et al.

athletes wearing TYR equipment (thus overstating the percentage of athletes wearing Speedo)" in certain races.  (Compl. ¶ 30.)

• Speedo accurately reports that "a large majority of swimmers who recently have won meets or set records have done so in the Speedo equipment."  TYR claims, however, that this statement is misleading because "Speedo neglects to mention that a majority of the elite swimmers who participated in the relevant events were in Speedo equipment."  TYR further alleges that "Speedo fails to mention that it sponsors a disproportionately high number of those athletes who are at the highest levels (such as Michael Phelps) and are therefore the likely candidates to set meet or world records."  (Id. ¶¶ 31, 32.)

• Speedo distributed a promotional document to its team dealers purporting to be "a very thorough analysis of the suit statistics from the Nationals three weeks ago," that shows "how we [Speedo] continue to dominate at the Senior National Level."  (Compl. ¶  29.)

 It is enough for TYR to allege that these statements are misrepresentations.  Moreover, TYR specifically alleges that "Speedo omitted several races where the results were unfavorable to them."  (Id.)  In the light most favorable to TYR, this claim may be read as an allegation of false advertising – that having conducted the "thorough analysis," Speedo intentionally altered the data to distort the results.  (Complaint ¶ 29.)  This seems plausible on its face, and is sufficient for pleading purposes under Twombly and Iqbal.

          3.     Other State Law Claims (Sixth through Tenth Claims)

     The Sixth through Tenth Claims are alleged under state law against Speedo and USA Swimming together.  Under the Sixth Claim, TYR alleges tortious interference with its contract with Vendt.  Speedo asserts a competitive privilege.  But "[t]he competitive privilege clearly is inapplicable to interference with an existing contract unless the contract is terminable at will."  San Francisco Design Ctr. Assocs. v. Portman Cos., 41 Cal. App. 4th 29, 41 (1995) (citing Show Management v. Hearst Pub. Co., 196 Cal. App. 2d 606, 618 (1961)) (emphasis supplied).  In its original motion, Speedo makes no argument or showing that TYR's contract with Vendt was at will.  Thus, the Court declines to apply the privilege against TYR's claim, as any doubts are resolved in favor of TYR for purposes of this motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-00529-JVS (MLGx)                Date   May 27, 2009

Title      TYR Sport Inc. v. Warnaco Swimwear Inc. Et al.

The Court next considers USA Swimming's argument that Vendt could not possibly have breached his contract with TYR, as the contract expressly allows him to "compete[] in any competition suit other than a TYR Product," but states that he "will not be entitled to any base compensation or any bonus for these performances, unless TYR is unable to provide a competition suit of reasonable comparability to the marketplace." (Docket No. 19, Ex. A, p. 4.)  Initially, the plain language of the contract appears to weigh heavily against TYR, such that its allegation no longer seems plausible.  The Court notes, however, that this contractual language is prefaced by qualifying language: "Notwithstanding anything herein to the contrary."  (Id.)  The Court also notes that elsewhere in the contract it states that "Vendt agrees to wear TYR Products and display the promotional TYR logo while engaged in athletic activities."  (Id., p. 5.)

Therefore, the Court finds this issue is inappropriate to resolve on a 12(b)(6) motion, especially since all of TYR's factual allegations must be taken as true.  TYR adequately alleges that Vendt's actions breached the contract.  (Compl. ¶ 58.)  TYR further alleges that its equipment is "as good or better than" Speedo's equipment.  (Id. ¶ 22.)  Moreover, whether a party has breached a contract and whether that breach is material are questions of fact.  Fed. Deposit Ins. Corp. v. Air Florida Sys., Inc., 822 F.2d 833,840 (9th Cir. 1987).

TYR properly states a claim under the Sixth Claim as to both Speedo and USA Swimming.

Under the Seventh Claim, TYR alleges tortious interference with prospective economic advantage.  Speedo and USA Swimming both challenge this claim on the ground that TYR has failed to plead the existence of a specific economic relationship between itself and an identifiable third party containing the probability of future economic benefit.  Both rely heavily on Westside Center Associates v. Safeway Stores 23, Inc., 42 Cal. App. 4th 507 (1996).  But the Court agrees with TYR that Westside Center inapposite here.  See, e.g., Sebastian Intern., Inc. v. Russolillo, 128 F. Supp. 2d 630, 637 (C.D. Cal. 2001) ("Westside had proceeded past the pleading stage, and therefore its reasoning is inapposite here where the Court seeks merely to determine whether the claim has been adequately pled.").  TYR cites persuasive authority from the Seventh Circuit, and the Court agrees that this authority is more directly on point here.  See Cook v. Winfrey, 141 F.3d 322, 328 (7th Cir. 1998) ("The Federal Rules do not require that his complaint allege the specific third party or class of third parties with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-00529-JVS (MLGx)                    Date   May 27, 2009

Title      TYR Sport Inc. v. Warnaco Swimwear Inc. Et al.

whom he claims to have had a valid business expectancy.").

For purposes of this motion, the Court finds that it is enough for TYR to "allege[] that such an [economic] expectancy existed and that [Speedo and USA Swimming] purposely interfered with it."  Id.  TYR thus properly states a claim under the Seventh Claim.

Under the Eighth Claim, TYR asserts a claim for trade libel.  The Court first considers Speedo's arguments.  Speedo contends that the trade libel claim fails for the same reason the false advertising claim fails, namely, because the challenged statements are all puffery or opinion.  In the main, the Court agrees.  Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 731 (9th Cir. 1999) (holding "puffery" by plaintiff's competitor not actionable under California defamation law); accord nSight, Inc., 2005 WL 1287553, at *2 (dismissing trade libel claim as puffing for same reasons as false advertising claims).  But this still leaves the "2% advantage" claim, as well as the claim that Speedo allegedly altered race results listed in its promotional materials.  Thus, these allegations cannot be dismissed on this basis alone.

Both allegations can be dismissed, however, on TYR's failure to satisfy the strict pleading requirement for special damages.  Under California law, "trade libel is an intentional disparagement of the quality of property, which results in pecuniary damage." Films of Distinction, Inc. v. Allegro Film Prod., Inc., 12 F. Supp. 2d 1068, 1081 (C.D. Cal.1998).  To prove trade libel, Plaintiff must show (1) a statement that (2) was false, (3) disparaging, (4) published to others in writing, (5) induced others not to deal with it, and (6) caused special damages.  Atlantic Mut. Ins. Co. v. J. Lamb. Inc., 100 Cal. App. 4th 1017, 1035 (2002); see also Leonardini v. Shell Oil Co., 216 Cal. App. 3d 547, 572 (1989) ("A cause of action for damages for trade libel requires pleading and proof of special damages in the form of pecuniary loss.").  Applying this standard to TYR's two surviving allegations, the Court finds that it must dismiss, with leave to replead, (1) the "2% advantage" allegation, as it alleges neither special damages nor that Schubert published the statement in writing; and (2) the promotional materials allegation, as it does not allege special damages.  See Isuzu Motors Ltd. v. Consumers Union of United States, Inc., 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998) ("A bare allegation of the amount of pecuniary loss is insufficient for the pleading of a trade libel claim.").

These dismissals apply equally as to USA Swimming, which raises additional

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-00529-JVS (MLGx) | Date | May 27, 2009 |
|---|---|---|---|

| Title | TYR Sport Inc. v. Warnaco Swimwear Inc. Et al. |
|---|---|

challenges under the Eighth Claim.  But the Court need not reach these additional challenges.  Suffice it to say that TYR has not adequately pled a trade libel claim under California law, and hence the Court dismisses the Eighth Claim as to all parties.

Under the Ninth Claim, TYR alleges unfair business practices under Section 17200 of the California Business and Professional Code.  Speedo contends that there is no "unfair competition" here because corporate sponsorship of national teams is absolutely legal and commonplace in the market.  But the allegations, favorably read, go beyond Speedo's corporate sponsorship of USA Swimming.   Based on Speedo's own cited authority, the Court finds that Section 17200

> was intentionally framed in its broad, sweeping language, . . . embrac[ing] anything that can properly be called a business practice and that at the same time is forbidden by law.  It governs anticompetitive business practices as well as injuries to consumers, and has as a major purpose the preservation of fair business competition.  It borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices that are independently actionable . . . .

Gregory v. Albertson's, Inc., 104 Cal. App. 4th 845 (2002).  On this basis, to the extent other claims remain, the Court declines to dismiss the Ninth Claim.

Similarly, to the extent that other claims remain, the Court declines to dismiss the Tenth Claim for injunctive relief.[13]

III.    ANTI-SLAPP MOTION

    A.    Legal Standard

California's anti-SLAPP statute allows for pre-trial dismissal of strategic lawsuits against public participation ("SLAPPs").  Cal. Civ. Proc. Code § 425.16.  The statute

---

[13]    The Court notes that a claim for injunctive relief is not a substantive claim, but merely a remedy which must be supported by a viable substantive theory.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 08-00529-JVS (MLGx) | Date | May 27, 2009 |

| | |
|---|---|
| Title | TYR Sport Inc. v. Warnaco Swimwear Inc. Et al. |

aims to identify, early in the litigation process, "meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." <u>Metabolife Int'l, Inc. v. Wornick</u>, 264 F.3d 832, 839 (9th Cir. 2001); <u>see also Wilcox v. Superior Court</u>, 27 Cal. App. 4th 809, 816 (1994).

To succeed under an anti-SLAPP motion, a defendant must "make a prima facie showing that the plaintiff's suit arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech under the United States or California Constitution." <u>Ellen L. Batzel v. Robert Smith, et al.</u>, 333 F.3d 1018, 1024 (9th Cir. 2003).

"The burden then shifts to the plaintiff to establish a reasonable probability that the plaintiff will prevail on his or her defamation claim." <u>Id.</u>  In other words, "the plaintiff must demonstrate that 'the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by plaintiff is credited.'" <u>Metabolife</u>, 264 F.3d at 840 (quoting <u>Wilcox</u>, 27 Cal. App. 4th at 823).

B.    <u>Discussion</u>

Apart from its motion to dismiss, USA Swimming also moves to strike the Third Claim and the Sixth through Tenth claims under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16.  USA Swimming contends that all of these state law claims arise out of, and seek to punish and stop, statements allegedly made by Schubert about the new Speedo LZR.  According to USA Swimming, the Court should therefore strike these speech-related claims because (1) they relate to speech on a matter of public concern, and (2) TYR cannot show a probability it will prevail on the merits.  <u>See, e.g.</u>, <u>Troy Group, Inc. v. Tilson</u>, 364 F. Supp. 2d 1149, 1152-53 (C.D. Cal. 2005).

Before reaching these issues, the Court first considers TYR's argument that its claims do not trigger the anti-SLAPP statute.  For the anti-SLAPP statute to apply, the Court finds that USA Swimming has the burden to show that the case arise from its "free speech in connection with a public issue or an issue of public interest."  Cal. Civ. Proc. Code § 425.16(e)(4).  TYR correctly points out that, with few exceptions, the anti-SLAPP statute does not apply to commercial speech about a competitor.  Without "adopt[ing] a per se rule excluding all competitor's statements from anti-SLAPP protection," California courts hold that "in most cases a competitor's statements

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-00529-JVS (MLGx)                    Date    May 27, 2009

Title    TYR Sport Inc. v. Warnaco Swimwear Inc. Et al.

regarding its competition would not fall within section 425.16, subdivision (e)(4)."  See, e.g., Integrated Healthcare Holdings, Inc. v. Fitzgibbons, 140 Cal. App. 4th 515, 526 (2006); see also Globetrotter Software, Inc. v. Elan Computer Group, Inc., 63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999) (holding that the statements of one company regarding a competitor company do not satisfy the "issue of public interest" requirement of the anti-SLAPP statute).  Finding that defendants were abusing the anti-SLAPP statute, the California legislature enacted Civil Procedure Code Section 425.17 to further curtail use of the statute in commercial disputes.  In relevant part, this provision reads:

> Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling . . . goods or services . . . arising from any statement or conduct by that person if both of the following conditions exist:
>
> (1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales . . . of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services.
>
> (2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer . . . .

Cal. Civ. Proc. Code § 425.17(c) (emphasis supplied).  This provision does not apply to, in relevant part, "[a]ny nonprofit organization that receives more than 50 percent of its annual revenues from federal, state, or local government grants, awards, programs, or reimbursements for services rendered."  Id. § 425.17(d)(3).[14]

---

[14] This is not the case here.  (See, e.g., Anti-SLAPP Mot. at 5 ("Sponsorship deals – including exclusive sponsorships – are the standard in the sports industry, and in the Olympic movement."); id. at 9 ("To sustain its national team and other programs, USA Swimming receives funding from three primary sources – memberships, sponsors, and the USOC, in that order."); Wielgus Decl. ¶ 77.)  The Court also takes judicial notice that the USOC is unusual within the international sports community in that it is funded by contributions from private citizens and by major support from the corporate community.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-00529-JVS (MLGx)                Date   May 27, 2009

Title      TYR Sport Inc. v. Warnaco Swimwear Inc. Et al.

The issue is whether the commercial speech exemption to the anti-SLAPP statute applies to USA Swimming, particularly under Section 425.17.  This issue remains unclear.  On the one hand, USA Swimming is generally not "a person primarily engaged in the business of selling . . . goods or services."  On the other hand, USA Swimming employs Schubert, a Speedo spokesperson, as national and Olympic team head coach.  In litigating this issue, the parties may rely on the pleadings and declarations.  See Brill Media Co., LLC v. TCW Group, Inc., 132 Cal. App. 4th 324, 331 (2005).  To that end, TYR argues that applying Section 425.17 to this case accords with (1) the statute's legislative history and (2) the underlying premise of the Complaint.  The Court agrees.

First, TYR correctly points out that "the legislative history of the commercial speech exemption to the anti-SLAPP statute confirms the Legislature's intent to except from anti-SLAPP coverage disputes that are purely commercial."  Taheri Law Group v. Evans, 160 Cal. App. 4th 482, 491 (2008) (referring to Section 425.17) (emphasis supplied).  Other California courts have made a similar point in less restrictive terms.  See, e.g., Brill Media, 132 Cal. App. 4th at 342 (noting that Section 425.17 "was intended to apply to commercial disputes").  TYR argues that, because Section 425.17 was intended to apply to business disputes, neither Schubert nor USA Swimming should be heard to argue they are less than Speedo's agents given the pleadings and declarations before the Court.  TYR further alleges that, under his current endorsement contract with Speedo, Schubert has assumed the express duty to promote Speedo products, and is prohibited from allowing any team member to wear a swimsuit in competition bearing a competitors' logo.  (Ant-SLAPP Opposition at 17 (citing exhibits pending discovery).)

Second, the Court finds that TYR's allegations against USA Swimming primarily involve a commercial dispute, for which the gravamen is that USA Swimming and Schubert combined to provide Speedo with a competitive advantage over its competitors in an unreasonable restraint of trade.  USA Swimming asserts that granting exclusive rights to a sponsor is standard in sports generally and across the Olympic movement.  The implication is that TYR's claims are therefore meritless.  But USA Swimming fails to cite an instance in which an NGB hired a spokesperson for a competitor in the industry to serve as its national and Olympic team head coach.[15]  If anything, the gravamen of an anticompetitive scheme does not appear meritless.  See discussion supra Part II.  In fact,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-00529-JVS (MLGx) | Date | May 27, 2009 |
|---|---|---|---|

| Title | TYR Sport Inc. v. Warnaco Swimwear Inc. Et al. |
|---|---|

it has an anchor in the case law.  See Hydrolevel, 456 U.S. at 562.[16]  Moreover, even if the exclusion for commercial speech is inapplicable here, TYR's allegations regarding non-puffery statements and non-speech conduct (e.g., collusion and interference) would still survive an anti-SLAPP challenge.

Based on these arguments, the Court agrees that the issue is close, but finds that USA Swimming has failed to carry its burden to show that the anti-SLAPP statute applies.  This is not the type of "meritless first amendment case[]" the anti-SLAPP statute was designed to prevent and punish.  Metabolife, 264 F.3d at 839.

IV.   CONCLUSION

For the foregoing reasons, the Court denies the anti-SLAPP motion.  The Court dismisses the Eighth Claim as to all parties, with leave for TYR to replead, but otherwise denies both motions to dismiss as to all other challenged claims.

_____

15   USA Swimming asserts that "exclusivity" for a sponsorship means that only the official sponsor is entitled to use the name rights and marks of the sport, and that the sport is contractually prohibited from allowing competitors of the sponsor any involvement which could be construed as "official recognition."  But TYR has accused USA Swimming of more – hiring the spokesperson of one of its key competitors to serve in a high-profile role within USA Swimming.

16   In Hydrolevel, the Supreme Court also held the nonprofit

| | 0 | : | 00 |
|---|---|---|---|
| Initials of Preparer | lma | | |