## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |

| | |
|---|---|
| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |

| | | |
|---|---|---|
| Present: The Honorable | James V. Selna | |
| | Karla J. Tunis | Not Present |
| | Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

Proceedings:    (IN CHAMBERS)
Defendant Speedo etc.'s Renewed Motion for Summary Judgment, or in the Alternative for Summary Adjudication of Claims (Fld 3-22-10)

Defendnt US Swimmng's Motion for Summary Judgment as to Remaining claims (Fld 3-22-10)

Plaintiff's Motion for reconsideration re Order on Motion for summary Judgment (fld 3-22-10)

      The Court, having been informed that the parties submit on the Court's tentative ruling previously filed, hereby GRANTS the referenced Motions for Summary Judgment and DENIES the Motion for Reconsideration in accordance with the tentative ruling as follows:

      Defendant Warnaco Swimwear, Inc. dba Speedo USA ("Speedo") moves for for summary judgment under Federal Rule of Civil Procedure 56 on the remaining claims for relief asserted against it by Plaintiff TYR Sport, Inc. ("TYR"). Defendants United States Swimming, Inc. ("USA Swimming") and Mark Schubert ("Schubert") also move for summary judgment under Rule 56 on TYR's remaining claims. Speedo and USA Swimming and Schubert (collectively, "Defendants") join each others' respective motions. TYR opposes both motions.

      TYR also moves under Rule 59 and Local Rule 7-18 for reconsideration of the Court's order granting summary judgment on TYR's Fourth claim for relief under the Lanham Act. Speedo opposes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |
|---|---|---|---|

| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |
|---|---|

## I.     PROCEDURAL BACKGROUND

On March 3, 2010, the Court granted in part and denied in part the Defendants' initial motions for summary judgment. (Docket Nos. 149, 154.) The Court granted summary judgment on TYR's claims for false advertising under the Lanham Act and intentional interference with contractual relations. (Docket No. 154 at 28, 32.) The Court also granted summary adjudication on the remaining antitrust claims to the extent they were based on a coercion theory of antitrust liability—that the Defendants conspired to force or coerce swimmers to purchase Speedo swimsuits. (Id. at 24.) However, because the Defendants had failed to address TYR's disparagement theory of liability, the Court denied summary judgment on the antitrust claims. (Id. at 20.) Recognizing the high threshold that a plaintiff must overcome to show that speech rises to the level of an antitrust violation, the Court invited a second round of briefing on the disparagement issue before the matter went to trial. (Id. at 33.) The Defendants now seek summary judgment on the remaining disparagement theory.

As set forth in the Court's prior order on summary judgment, this case revolves around the "swimsuit wars" of 2008 and 2009. (Id. at 2.) Speedo and TYR are competing manufacturers of high-end swimwear and accessories. (Id.) USA Swimming is the national governing body of the sport of swimming in the United States and has an exclusive sponsorship agreement with Speedo. (Id.) Schubert was, at all relevant times, employed by USA Swimming as the National and Olympic Team head coach and general manager. (Id.)

TYR's antitrust claims, under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2, the Cartwright Act, Cal. Bus. & Prof. Code § 16720 et seq., and the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., rest on TYR's theory that Speedo, USA Swimming, and Schubert all conspired to unfairly promote Speedo's products and disparage competitors' from Schubert's position of clout within the swimming community.

## II.     SUMMARY JUDGMENT

### A.     Legal Standard

Summary judgment is appropriate only where the record, read in the light most

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |
|---|---|---|---|

| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |
|---|---|

favorable to the nonmoving party, indicates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the moving party meets its burden, then the nonmoving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. See id. at 322-23. If the nonmoving party meets this burden, then the motion will be denied. Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000).

Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322.

A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation marks and citations omitted). In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Am. Int'l Group, Inc. v. Am. Int'l Bank, 926 F.2d 829, 837 (9th Cir. 1991).

B.    Discussion

As discussed above, TYR's remaining claims against Speedo, USA Swimming, and Schubert all depend on its disparagement theory of antitrust liability. TYR bases this claim on a series of statements made by Schubert to elite swimmers and coaches touting the benefits of Speedo's LZR Racer swimsuit and disparaging the suits of Speedo's competitors.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |
|---|---|---|---|

| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |
|---|---|

TYR points to five sets of statements that it contends amount to violations of the antitrust laws: (1) a statement by Schubert at the December 2007 National Team Coaches Meeting that "athletes [should] wear the Speedo equipment if they wanted to compete at the highest level," and references made by Schubert and a fellow USA Swimming employee to NASA testing and "4% less drag"; (2) a March 2008 email from Schubert to twenty swimming coaches stating that "only one company [Speedo] is putting millions into research and development" and "the trailing companies . . . [offer] an inferior product"; (3) a statement by Schubert to swimmers at a National Team meeting before an April 2008 swim meet in Manchester, England, that the Speedo LZR Racer "would give you a 2% advantage"; (4) a statement by Schubert to reporter Craig Lord at the same April 2008 meet that "if you take the best times of world record holders and their new times [in the Speedo LZR], the difference is 2 percent," and that "some [swimmers] are contracted to an inferior product"; and (5) a statement by Schubert in January 2009 to two Junior National Team swimmers in Guam that they should wear the Speedo LZR because it was "faster" than the non-Speedo suits they were wearing.

1.    False Advertising Under Section 1

As a preliminary matter, USA Swimming and Schubert contend that TYR cannot maintain an antitrust claim for false advertising under Section 1 of the Sherman Act. They note the Court's previous order on a motion to dismiss that, in order to distinguish Schachar v. American Academy of Ophthalmology, Inc., 870 F.2d 397 (7th Cir. 1989), TYR would have to prove that Schubert used his influence to coerce swimmers into wearing Speedo products.  (Docket No. 72 at 8-9.)  However, as pointed out by TYR, Schachar's analysis rests partially on the fact that the Seventh Circuit does not recognize a theory of antitrust liability based on false advertising.  870 F.2d at 399; see also Sanderson v. Culligan Int'l Co., 415 F.3d 620, 623 (7th Cir. 2005).  In contrast, the Ninth Circuit does.  See Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc., 108 F.3d 1147, 1151-52 (9th Cir. 1997).  Thus Schachar, which is only persuasive authority in this Court, need not be entirely distinguished, especially where it may conflict with Harcourt Brace.  This leaves open the question of whether a Section 1 claim can be based on false advertising in the Ninth Circuit.

USA Swimming and Schubert note that Harcourt Brace is a Section 2 decision and that no Ninth Circuit decision has extended it to a Section 1 conspiracy claim.  However, the Ninth Circuit has never expressly precluded false advertising as a Section 1 claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |
|---|---|---|---|

| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |
|---|---|

either.  And to the extent that <u>Harcourt</u> <u>Brace</u> recognizes that false advertising may constitute exclusionary conduct under Section 2, the Court is hesitant to find that it can <u>never</u> constitute a restraint of trade under Section 1.

In fact, the Eighth Circuit has recognized a Section 1 claim based on a conspiracy between a market participant and an ostensibly neutral non-market participant to disparage a competitor.  <u>See</u> <u>Impro</u> <u>Prods., Inc. v. Herrick</u>, 715 F.2d 1267, 1271, 1273 (8th Cir. 1983).  In <u>Impro</u>, the plaintiff alleged that:

> in return for compensation from the corporate defendants, [defendant] Dr. Herrick used his various positions [as a U.S. Department of Agriculture veterinarian and an Iowa State University professor] to promote the products of the corporate defendants, to disparage [plaintiff's] products, and to influence various federal and state governmental officials to deny [plaintiff] necessary licensing for its products.

<u>Id.</u> at 1271.  The court recognized this as a cognizable theory under Section 1, though it granted summary judgment because there was no evidence of a conspiracy.  <u>Id.</u> at 1273, 1279-80.

However, for a disparagement-based antitrust claim, <u>Harcourt</u> <u>Brace</u> sets a high burden of proof—the Ninth Circuit "insist[s] on a preliminary showing of significant and more-than-temporary harmful effects on <u>competition</u> (and not merely upon a competitor or customer) before these practices can rise to the level of exclusionary conduct."  108 F.3d at 1151 (citing 3 Phillip Areeda & Donald F. Turner, <u>Antitrust</u> <u>Law</u> ¶ 737b (1978)) (emphasis in original) (internal quotation marks omitted).  Because TYR has not made this requisite preliminary showing, the Court need not decide whether a Section 1 claim can ever be based on false advertising.[1]

---

[1]  USA Swimming and Schubert also argue that TYR did not plead a Section 1 false advertising or disparagement claim against them.  This is incorrect.  (<u>See</u> Compl. ¶ 13 ("USA SWIMMING, SPEEDO and SCHUBERT have also combined to engage in a campaign of falsely disparaging the products of SPEEDO'S competitors, including TYR . . . .").)

USA Swimming and Schubert also appear to contend that TYR should be estopped from asserting a disparagement-based claim against them under Section 1 because in TYR's opposition to a motion to dismiss, it stated that <u>Harcourt Brace</u> "is irrelevant to the standards for pleading a Section 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |

| | |
|---|---|
| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |

2.     Disparagement Versus Promotion

The Defendants argue that many of the statements TYR complains of involve only promotion of Speedo and do not directly disparage TYR or other competitors.  Although Harcourt Brace itself involved the direct disparagement of a rival, the Court sees no reason why false statements of promotion could not be actionable under similar reasoning.  "[M]isrepresentations encouraging the purchase of [a] product can fit [the] general test for an exclusionary practice when the impact on rivals is significant; deception of buyers can impede the opportunities of rivals."  3A Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 782b (2007).  The claims should not be dismissed on this basis.

3.     Protected Statements

The Defendants also argue that several of the statements upon which TYR rests its claims are protected by the First Amendment or constitute puffery and thus cannot be the basis for an antitrust claim.  See Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc., 175 F.3d 848, 860 (10th Cir. 1999) ("[T]he First Amendment does not allow antitrust claims to be predicated solely on protected speech.").  For example, in the order on the initial motions for summary judgment, the Court found that Schubert's statements to reporter Craig Lord ("Lord") were not commercial speech and thus not actionable under the Lanham Act.  (Docket No. 154 at 26-28.)  The Court also previously found several statements by Schubert to be puffery.  (Docket No. 72 at 16-18.)

*Statements to Lord*

TYR contends that Schubert's statements to Lord are commercial speech actionable under the antitrust laws.[2]  That ship has sailed; the Court already made the

---

claim."  (Docket No. 49 at 13.)  However, TYR appears to have been arguing that the limitations set forth in Harcourt Brace do not apply to a Section 1 claim, not that the Section 1 claim was not based on disparagement.  Because this argument is not inconsistent with its current argument, TYR is not estopped from asserting a disparagement-based theory against USA Swimming and Schubert.  See Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001).

[2]  Though the parties do not explicitly address the issue and assume that Lanham Act cases are applicable to a false advertising-based antitrust claim, the Court finds that an antitrust plaintiff must

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |
|---|---|---|---|

| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |
|---|---|

determination the statements to Lord did not constitute commercial speech in the context of TYR's Lanham Act claim—TYR failed to even oppose Speedo's argument.  (Docket No. 154 at 26-28.)  TYR cannot resurrect these statements as a basis for its antitrust claim absent some grounds for reconsideration, <u>see</u> Local Rule 7-18, which TYR has not provided.

In any case, the Court is not persuaded by TYR's attempt to distinguish <u>Boule v. Hutton</u>, 328 F.3d 84 (2d Cir. 2003), which the Court relied upon in granting summary judgment on TYR's Lanham Act claim.  As discussed in the Court's prior order, <u>Boule</u> involved allegedly false statements made by art collectors about the authenticity of another collection.  <u>Id.</u> at 86, 88.  The statements were made to a reporter for an industry publication writing about the prevalence of fraud in the art market.  <u>Id.</u>  The Second Circuit found that the statements were not commercial speech and therefore not actionable under the Lanham Act.  <u>Id.</u> at 91-92.

TYR argues that Schubert's statements to Lord promoting the virtues of Speedo and stated that competitors had "inferior products" are distinguishable because they are not "inextricably intertwined" with the issue of public concern that Lord was writing about—"the evolution of swimsuit technology and its impact on the sport of competitive swimming."  (TYR's Compendium of Exs. ("COE"), Ex. 12 ¶ 13.)  The Court disagrees. Schubert's discussion of the Speedo LZR Racer, its effect on swimming times, and his concern that swimmers who wore what he considered "inferior products" would be at a competitive disadvantage all closely relate to the to topic of swimsuit technology and the impact on the sport.  Indeed, when read in the full context and not just as carefully plucked snippets, Schubert's statements reflect a desire for <u>more</u> competition in swimsuit

---

demonstrate that the false statement was made in commercial advertising or promotion, as under the Lanham Act.  <u>See</u> <u>Newcal Indus., Inc. v. Ikon Office Solution</u>, 513 F.3d 1038, 1052 (9th Cir. 2008). The Ninth Circuit's rationale for allowing false advertising-based antitrust claims—to prevent the deception of buyers to the detriment of rivals—is the same as the policy behind the Lanham Act. Indeed, <u>Harcourt Brace</u>'s de minimis presumption test closely tracks the elements of a Lanham Act claim.  <u>Compare</u> <u>Harcourt Brace</u>, 108 F.3d at 1152 (antitrust plaintiff must show statements are "(1) clearly false, (2) clearly material, (3) clearly likely to induce reasonable reliance, (4) made to buyers without knowledge of the subject matter, (5) continued for prolonged periods, and (6) not readily susceptible of neutralization"), <u>with</u> <u>Newcal Indus.</u>, 513 F.3d at 1052 (Lanham Act plaintiff must show that statement is (1) false, (2) in commercial advertising or promotion, (3) deceptive, (4) material, (5) in interstate commerce, and (6) that plaintiff had been injured).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |
|---|---|---|---|

| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |
|---|---|

technology, which he hoped would prolong the careers of swimmers.[3]

The Court is not persuaded by the two cases cited by TYR. In Semco, Inc. v. Amcast, Inc., 52 F.3d 108 (6th Cir. 1995), the Sixth Circuit found that an article in a trade journal written by a manufacturer could constitute commercial speech because it contained gratuitous promotions of the manufacturer's product, "which [did] not contribute to [the article's] intellectual or technical value." Id. at 113. Here, in contrast, the SwimNews.com article was written by Lord, not Schubert; Lord chose what to include in the article, and Schubert's comments came only in response to Lord's apparently unsolicited questions. See Boule, 328 F.3d at 91. Moreover, unlike the comments at issue in Semco, Schubert's comments about competing swimsuit manufacturers are inextricably related to the subject of Lord's article—the evolution of swimsuit technology. It is difficult to fathom how Schubert could have discussed the subject without addressing the products currently on the market.

In Fuente Cigar Ltd. v. Opus One, 985 F. Supp. 1448 (M.D. Fla. 1997), the court, on a motion for leave to amend a pleading, held that a competitor's statements made to a reporter in a trade publication about pending litigation was commercial speech actionable under the Lanham Act. Id. at 1450, 1456. The court primarily relied on the fact that the comments were made in a trade publication and not general news publications or magazines. Id. at 1456. The Court finds this case distinguishable because SwimNews.com is not a trade publication. Fuente Cigar involved statements in a cigar industry publication about competing cigar manufacturers. Id. at 1450. SwimNews.com, by contrast, is a general news publication about the sport of swimming, providing news about swim meets, specific swimmers and coaches, controversies in the swimming community, and other relevant news.[4] Its intended audience is not swimsuit manufacturers or vendors. No reasonable juror would mistake the website for a trade

---

[3] "The fact is that there is nothing more important than having the manufacturers be competitive because they do provide the living for the athletes and that's what's really helped the sport of swimming to allow the athletes to swim to older ages, more like track and field. I have always felt that swimming should be like track and field (in terms of the ages and longevity of athletes) but the problem we have now is that everyone is contracted to one suit and some are contracted to an inferior product and those manufacturers need to let go and everyone can compete on a level playing field with a product that is the same and then they need to put the effort in and catch up." (COE, Ex. 13.)

[4] The Court takes judicial notice of SwimNews.com. Fed. R. Evid. 201(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-00529-JVS (MLGx)                    Date   April 26, 2010

Title   TYR Sport Inc. v. Warnaco Swimwear Inc., et al.

journal or industry publication.  Moreover, to the extent <u>Fuente Cigar</u>'s reasoning conflicts with <u>Boule</u>—which also involved an industry publication—the Court finds <u>Boule</u>, a more recent Court of Appeals decision, to be more persuasive.

Accordingly, the Court affirms its prior decision that the statements to Lord are not commercial speech and therefore not actionable as an antitrust violation.

*2007 Coaches Meeting and 2008 Email*

The Defendants contend that the comments made by Schubert at the December 2007 coaches meeting and Schubert's March 2008 email to coaches constitute puffery. One of the coaches at the 2007 meeting recalls "Coach Schubert stat[ing] that coaches should advise their athletes to wear Speedo equipment if they wanted to compete at the highest level."[5]  (COE, Ex. 7 ¶ 3.)  The Court finds this to be classic puffery—"exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely."  <u>Southland Sod Farms v. Stover Seed Co.</u>, 108 F.3d 1134, 1145 (9th Cir. 1997) (citing 3 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 27.04[4][d] at 27-52 (3d ed. 1994).  For a statement to be actionable,[6] it must make a "specific and measurable advertisement claim of product superiority."  <u>Id.</u> at 1145.  The statement attributed to Schubert is a general statement of superiority and contains nothing about the specific attributes of Speedo equipment.  No reasonable buyer would rely on this statement in making a purchasing decision.

TYR argues that the statement is not puffery because it is capable being proven false, as demonstrated by the fact that swimmers wearing TYR suits successfully competed at the Olympics, "the highest level."  TYR misses the point.  Whether a

---

[5]  Although TYR has a video recording of the coaches meeting, (<u>see</u> Hilton Decl. ¶ 2), it is unable to point out where Schubert actually made such an assertion.  The only evidence of this statement is the coach's declaration, executed over two years after the meeting took place.  However, because this is a motion for summary judgment, the Court may not weigh this evidence against the actual recording of the coaches meeting.  <u>Balint v. Carson City, Nev.</u>, 180 F.3d 1047, 1054 (9th Cir. 1999).

[6]  As noted above, the Court finds that an alleged false advertisement must, at a minimum, be actionable non-puffery under the Lanham Act.  <u>See Harcourt Brace</u>, 108 F.3d at 1152 (noting the difficulty of distinguishing actionable false statements from puffing   in setting for the de minimis presumption).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |
|---|---|---|---|

| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |
|---|---|

statement is puffery does not depend on the truth or falsity of a statement; it depends on the degree of generality or specificity.  "The "puffing" rule amounts to a seller's privilege to lie his head off, so long as he says nothing specific."  Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 945 (3d Cir. 1993) (quoting W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 109, at 756-57 (5th ed. 1984)); Pizza Hut, Inc. v. Papa John's Int'l, Inc., 227 F.3d 489, 497 (5th Cir. 2000).  The statement here is unquestionably a statement of hyperbole, but it is a general one.  No reasonable person would think that they would be incapable of competing without the Speedo suit.

TYR also attempts to analogize to two Second Circuit decisions, Castrol and Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144 (2d Cir. 2007).  In Castrol, the defendant claimed that its motor oil "outperforms any leading motor oil against viscosity breakdown."  987 F.3d at 941.  The court found this to be literally false, as demonstrated by a battery of comparative tests of viscosity breakdown.  Id. at 943-44.  The analogy to this case is very weak: the Castrol statement singled out a specific attribute of motor oil—viscosity breakdown—that could be proven false by specific testing, whereas the statement here amounts to a general statement that Speedo's swimsuits are superior without any comparisons of any specific attributes of the suits.

Likewise, the analogy to Time Warner Cable is weak.  There, the court found that the statements in television advertisements that "[y]ou're just not gonna get the best picture out of some fancy big screen TV without DIRECTV. It's broadcast in 1080i," and that "settling for cable would be illogical," were likely to be shown literally false on a motion for a preliminary injunction.  497 F.3d at 154, 158.  The court found that, in the context of the advertisements, the statements made the claim that the picture quality of satellite was better than cable.  Id.  Again, this case is distinguishable because the statements made assertions about a specific attribute of the product—picture quality—whereas the general statement attributed to Schubert does not.

The Defendants also argue that the statements in Schubert's March 2008 email are puffery.  Schubert giving his "personal opinion" on the swimsuit controversy, stated that:

[Speedo] is putting millions into research and development. . . .  To combat this, the trailing companies [TYR and Nike] pay more money to sign our new pros to big contracts wearing an inferior product.  We need our coaches and athletes to pressure the other manufacturers to "get in the game."  Three

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-00529-JVS (MLGx)                         Date   April 26, 2010

Title   TYR Sport Inc. v. Warnaco Swimwear Inc., et al.

competitive companies (or more) is to all our advantage.

(COE, Ex. 10 (emphasis in original).)  The statement that TYR provided "an inferior product" is clearly puffery.  See, e.g., U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 926 (3d Cir. 1990) (finding "better than" statement to be "the most innocuous kind of 'puffing'").

However, TYR argues that the "inferior product" statement is actionable because it came within the context of previous statements about testing and therefore gave the impression that the claim was based on independent testing.  See Southland Sod, 108 F.3d at 1145; Pizza Hut, 227 F.3d at 495 n.5 ("Where the context of an advertising statement may lend greater specificity to an otherwise vague representation, the court should not succumb to the temptation to hastily rule a phrase to be unactionable under the Lanham Act." (quotation omitted)).  TYR points to comments made by Jonty Skinner ("Skinner"), a USA Swimming employee, at the December 2007 coaches meeting that the Speedo suit was tested by NASA and achieved a 4% reduction in drag, (Hilton Decl. ¶ 2), a reference in Schubert's email to research and development, (COE, Ex. 10), and a note in Craig Lord's SwimNews.com article that the technology was developed by NASA, (COE, Ex. 13).

The Court finds that none of these references even remotely implies that the "inferior product" statement was based on any testing.  First of all, Skinner's statements were clearly based on comparative testing of previous generations of swimsuits and could not be reasonably interpreted as comparative testing of Speedo's current products against competitors' current products.[7]  They are irrelevant to Schubert's statement months later about "inferior products."[8]  Second, Schubert's reference to Speedo spending millions on

---

[7] "In the testing that they [Speedo] do, and they go all the way to NASA and they test with a device at NASA, test the friction of the suit . . . .  And you quantify the suit that evolved in Melbourne as being 4% less friction as the one that they had in Sydney . . . .  And they quantify the suit that's going to come out in Beijing as being 3% faster than the suit that came out in Melbourne, or 3% less friction than the suit that came out in Melbourne." (COE, Ex. 8, [Recording of National Team Coaches Meeting, Dec. 16-17, 2007, Disk 4] at 39:05.)

[8] The Court reads TYR's argument as using Skinner's comments to provide the context for statements by Schubert, and not as providing a separate instance of false advertising.  (See Opp'n Br. 9.) In any case, Defendants would be entitled to summary judgment, as TYR admits that it cannot prove

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |

| | |
|---|---|
| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |

research in no way implies any sort of comparative testing. And finally, Lord's article can give no context to the March 13 email as it was published nearly a month <u>after</u> the email. (COE, Ex. 13.) Moreover, it was written by Lord, a swim reporter who is not alleged to be an agent of Speedo, USA Swimming, or Schubert.

Accordingly, the Court finds that Schubert's statements at the December 2007 coaches meeting and the March 2008 email are non-actionable puffery.[9]

4.     <u>Effect on Competition</u>

In order to state a valid Sherman Act claim under a false advertising theory, the plaintiff must make a "preliminary showing of significant and more-than-temporary harmful effects on <u>competition</u> (and not merely upon a competitor or customer)." <u>Harcourt Brace</u>, 108 F.3d at 1151 (emphasis in original). Because of the difficulties in distinguishing actionable false statements from puffing, the speculative effect that advertising has on consuming behavior, and buyer distrust of seller's disparaging comments, the Ninth Circuit has set forth a presumption that commercial speech or advertising has a de minimis effect on competition. <u>Id.</u> at 1152. A plaintiff may overcome this presumption by showing that the charged speech meets a six-factor test: the statements must be "(1) clearly false, (2) clearly material, (3) clearly likely to induce reasonable reliance, (4) made to buyers without knowledge of the subject matter, (5) continued for prolonged periods, and (6) not readily susceptible of neutralization or other offset by rivals." <u>Id.</u> (citation omitted).

TYR argues that it must only demonstrate that the speech here meets the <u>Harcourt Brace</u> six-factor test. In other words, TYR's position is that the de minimis presumption is the <u>only</u> hurdle that an antitrust plaintiff must overcome to get to a jury on a false advertising claim. The Court disagrees with TYR's reading of <u>Harcourt Brace</u>.

<u>Harcourt Brace</u> first sets out the requirement that disparagement "must have a significant and enduring adverse impact on competition itself in the relevant markets to

---

that Skinner's statements are false. (<u>Id.</u> at 5:13-15; COE, Exs. 22, 23.)

[9]  The Defendants do not argue that the statement at the 2008 Manchester team meeting and the statement to the junior swimmers in 2009 are puffery.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |

| | |
|---|---|
| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |

rise to the level of an antitrust violation." Id. at 1152. The plaintiff has the burden of proving this "significant and enduring impact" in order to proceed on the claim. Id. at 1151.

The court then specified that antitrust claims based on false advertising "should presumptively be ignored"—that is, the defendant is entitled to a presumption that false advertising has a de minimis effect on competition before the introduction of any evidence of actual market impact. See id. at 1152. The six-factor test—which focuses on the characteristics of the charged speech and not on any evidence of actual market effect—is the plaintiff's means of overcoming this first hurdle. It does not, however, satisfy the plaintiff's burden of proving an actual "significant and enduring adverse impact on competition." In other words, a plaintiff that has discharged the de minimis presumption is not automatically entitled to its own presumption of significant market effect. In addition to showing that the speech is of the type that could have a significant effect on competition, the plaintiff has the burden of showing that it actually did affect competition.[10]

Therefore, the Defendants having asserted TYR's lack of evidence of a "significant and enduring adverse impact," TYR has the burden of coming forward with evidence to create a triable issue of fact. Celotex, 477 U.S. at 323. TYR points to four alleged market circumstances it puts forth as evidence of an adverse effect on competition: (1) from February 2008 to June 2009, Speedo increased market share while charging a higher price than TYR; (2) Speedo controlled 95% of the market by June 2009; (3) during that time period, TYR lost market share; and (4) Nike completely exited the market in September 2009.

The first three circumstances are based on a report prepared by Robin Cantor ("Cantor"). (COE, Ex. 1.) Cantor's report compared the sales of "championship suits," such as the Speedo LZR Racer and the TYR Tracer Rise, in periods prior to the alleged unlawful conduct against the "injury period" of February 2008 to July 2009. (Id. ¶¶ 15, 18.) Cantor limited her analysis to sales to "Team Dealers," retailers who sell suits to competitive swimmers and teams, where TYR and Speedo generated a majority of their

---

[10]  This holding is supported by the fact that the Ninth Circuit has applied the "significant and enduring impact" test for claims outside the context of false advertising. Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co., 141 F.3d 947, 952 (9th Cir. 1998)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |

| | |
|---|---|
| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |

championship suit revenue.  (Id. ¶¶ 15, 19.)  Cantor studied the sales data from three Team Dealers.  (Id. ¶ 20.)  Cantor also limited her analysis to sales of TYR and Speedo products only, because those two manufacturers "dominated" the Team Dealer market. (Id. ¶ 20.)  Cantor found that Speedo increased its relative share of the Team Dealer market after the introduction of the LZR Racer while charging higher prices than TYR's Tracer Rise.  (Id. ¶¶ 48-50.)  Cantor concludes that this is "consistent with the conclusion that the challenged conduct injured TYR sales and competition in championship suits." (Id. ¶ 50.)

The one major flaw in Cantor's analysis—and the reason it does not provide evidence of significant injury to competition—is that it completely omits the sales of any other swimsuit manufacturers.  Cantor defined a market where TYR is Speedo's only competitor, thereby allowing her to assert that injury to TYR is injury to competition. The supposed "market share" is actually a measure of the relative sales volume of Speedo as compared to TYR, and says nothing about Speedo's of TYR's actual market share because there is no evidence of the sales of other competitors like Nike, blueseventy, Arena, Jaked, or Adidas.

Cantor justifies the exclusion of other competitors from the analysis on the assertion that TYR and Speedo "dominate" the Team Dealer market.  (Id. ¶ 20.)  Cantor notes that, over the five year period from 2004 to 2009, Speedo and TYR accounted for 77% and 17% of the sales to Team Dealers of suits costing at least $40.  (Id.)  However, this is very misleading.  Throughout the report, Cantor tallies the sales of championship and "high-end" championship suits; yet, in order to exclude all competitors other than TYR and Speedo, she tallies all suits costing more than $40, rather than the relevant championship suits.  This has the effect of minimizing the relevant market share of manufacturers that concentrate on the higher-priced championship suits.  Moreover, by averaging sales over a five-year period, Cantor minimizes the market share of recent entrants like blueseventy, which entered the market in the summer of 2008.  (USA Swimming Reply Br., Ex. B ¶ 5.)  Finally, by limiting the analysis to Team Dealer sales, Cantor excludes the relevant sales of manufacturers like Jaked and Arena, which concentrate on direct internet sales or on-site sales at swim competitions.  (Id. ¶ 5.)

Thus, Cantor's report shows only that Speedo's sales in the Team Dealer market increased relative to TYR's sales.  TYR has presented no evidence of the sales or market shares of any of the competitors.  On this record, there is no way to determine whether

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |

| | |
|---|---|
| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |

TYR's lost sales were picked up by new entrants or whether Speedo actually <u>lost</u> overall market share to new entrants at any time during the relevant period.  At best, Cantor's report is evidence of injury to TYR, Speedo's competitor, but does not show injury to competition, which is what the law requires.[11]  <u>Pool</u> <u>Water</u> <u>Prods.</u> <u>v.</u> <u>Olin</u> <u>Corp.</u>, 258 F.3d 1024, 1036 (9th Cir. 2001) (finding no antitrust injury because "[a] decrease in one competitor's market share . . . affects competitors, not competition"); <u>see</u> also <u>Leegin</u> <u>Creative</u> <u>Leather</u> <u>Prods.,</u> <u>Inc.</u> <u>v.</u> <u>PSKS,</u> <u>Inc.</u>, 551 U.S. 877, 906 (2007) ("The purpose of the antitrust laws, by contrast, is 'the protection of <u>competition</u>, not <u>competitors</u>.'" (quoting <u>Atlantic</u> <u>Richfield</u> <u>Co.</u> <u>v.</u> <u>USA</u> <u>Petroleum</u> <u>Co.</u>, 495 U.S. 328, 338 (1990) (emphasis in original)).

The Court also finds that Cantor's report should be excluded under Federal Rule of Evidence 702 as unreliable and not based on sufficient facts or data.  <u>See</u> <u>Daubert</u> <u>v.</u> <u>Merrell</u> <u>Dow</u> <u>Pharms.,</u> <u>Inc.</u>, 509 U.S. 579, 589-95 (1993).  By not considering any data on the pricing, sales volume, or market share of manufacturers other than Speedo and TYR, Cantor simply cannot make a reliable analysis as to market impact.  The report is therefore irrelevant to the issue of market impact.

Although not necessary to support the Court's conclusion, the Defendants have offered evidence that competition in the championship swimsuit market actually <u>increased</u> after Schubert's statements, in the form of new market entrants like blueseventy, Jaked, Arena, and Adidas.  The success of the LZR Racer at the 2008 Olympics spurred these companies to produce new suits for the American market.  (<u>See</u> Lord Decl. ¶¶ 26-28; Schubert Depo. at 94:3-96:8, 182:2-25; USA Swimming Reply Br.,

---

[11]  Because the supplemental export report by Jules H. Kamin ("Kamin") relies entirely on Cantor's report, it suffers from the same flaws.  (<u>See</u> COE, Ex. 3 ¶ 1.)  Kamin opines that:

> [t]he fact that Speedo was able to increase its market share, the absolute quantity of units sold, and its prices while the quality of its championship suits was not superior to that of TYR's . . . [shows] that the conduct of the defendants cause economic injury to consumers, sometimes called injury to competition.

(<u>Id.</u> ¶ 5.)  However, as discussed above, Cantor's report does not measure actual market share; it only measures Speedo's sales relative to TYR's.  And Cantor's report does not support the claim that Speedo increased prices.  Cantor merely found that Speedo charged higher prices than TYR.  (COE, Ex. 1. ¶¶ 39-40 & tbl. 8.)  Thus, Kamin's assertion of "allocative inefficiency" is based on faulty assumptions. (<u>See</u> Kamin Decl. ¶ 5(b) & (c).)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |
|---|---|---|---|

| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |
|---|---|

Ex. B ¶ 5; Furniss Decl. 85:20-86:8; Bielak Decl., Exs. L ¶ 4-7, M, N, P, V.)  By the time of the U.S. World Championship trials in July 2009, one year after the 2008 Olympic Trials, these new entrants had made very significant traction among elite swimmers, as shown by the suit choice of swimmers in the finals of several competitions:

| Manufacturer | 2007 U.S. Nationals | 2008 U.S. Olympic Trials (July 2008) | 2009 U.S. World Championship Trials (July 2009) |
|---|---|---|---|
| Speedo | 77 | 80 | 30 |
| TYR | 7 | 13 | 10 |
| Nike | 12 | 1 | 0 |
| Arena | 0 | 0 | 19 |
| blueseventy | 0 | 6 | 9 |
| Jaked | 0 | 0 | 32 |
| Others | 4 | 0 | 0 |

(Supp. Isaac Decl. ¶ 4, Exs. A-C.)

In addition, one of the country's largest swimsuit retailers noticed the dramatic penetration of blueseventy into the high-end swimsuit market.  (See USA Swimming Reply Br., Ex. B ¶¶ 1, 4-7.)  From May 2007 to May 2008, the retailer estimated its sales by manufactuer in the following percentages: 70% for Speedo, 15% for TYR, and 15% for Nike.  (Id. ¶ 4.)  After blueseventy entered the market in the summer of 2008, the retailer estimated its sales in the second half of 2008 and the first half of 2009 according to the following percentages: 75% for blueseventy, 12% for Speedo, and 3% combined for TYR and Nike.[12]  (Id. ¶ 5.)  The retailer estimates that the total sales volume for blueseventy during that period was $600,000.  (Id. ¶ 7.)  In that time period, the retailer sold to roughly 20% of all collegiate swim teams and between 85% to 90% of those

---

[12]  These estimates also demonstrate the fallacy of the Cantor report.  By excluding the sales of blueseventy, the new entrant, Cantor's analysis completely fails to account for 75% of the market, at least at this retailer.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |

| | |
|---|---|
| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |

customers purchased the blueseventy suit.  (Id. ¶ 6.)

        Finally, Speedo presents evidence that TYR had difficulty keeping up with demand
for its championship suit.  If Schubert's comments actually had the effect of excluding
TYR from the market, one would ordinarily expect to see excess inventory, or greater
supply than demand for TYR's goods, rather than the opposite.  However, in January
2008, Steve Furniss, TYR's Executive Vice President, noted in an email that, "[o]n
Tracer Light [TYR's high-end suit at the time] we are already behind in production
schedule and Sales has already sold out initial allocation plus they are behind sample and
promotional needs."  (Richter Decl., Ex. E.)  These production delays were confirmed by
Matt Zimmer, TYR's Promotions Director, who laid out a plan of rationing the available
inventory of Tracer Light suits among college teams, noting the "extremely frustrating
situation [of] hav[ing] so few championship suits available for our many teams."  (Id.,
Ex. F.)  However, he also noted the high demand, stating that "we've got teams
clammoring [sic] for our newest suits."  (Id.)  A month later, in March 2008, Zimmer
stated—in an email titled "Tracer allocation"—that "our Tracer inventory is still well
below what we hoped it would be," though "the demand has really ramped up once
again."  (Id., Ex. G.)  Even after the Beijing Olympics, TYR acknowledged the limited
availability of its championship suits to NCAA coaches, noting that "[w]e have
experienced strong demand [for the Tracer Light] and continue to chase availability," and
that the TYR Tracer Rise "will not be available until early 2009" due to a temporary
NCAA ban.  (Id., Ex. I.)

        The Defendants' evidence of elite swimmers using suits by new entrants,
significant sales volume and market share, and TYR's inability to keep up with demand
appears to show not only that there was no significant impact on competition (as opposed
to TYR individually), but also that any adverse effect on competition was short-lived and
not enduring.[13]

---

        [13]  TYR contends that the "enduring impact" test is a low bar, citing In re Remeron Antitrust
Litigation, 335 F. Supp. 2d 522 (D.N.J. 2004) and Indiana Grocery Co. v. Super Value Stores, 647 F.
Supp. 254 (S.D. Ind. 1986), both of which allowed antitrust claims to proceed for relatively short
periods of alleged unlawful conduct.  However, neither of these cases involved a false advertising
antitrust claim and, thus, neither applied the "significant and enduring impact" test set forth in Harcourt
Brace.  See Remeron, 335 F. Supp. 2d at 526-27; Indiana Grocery, 647 F. Supp. at 256-57.  And
although Thompson's Gas & Elec. Serv. v. BP Am., No. 08 CV 2693, 2010 U.S. Dist. LEXIS 16906
(N.D. Ill. Feb. 25, 2010), cites the Harcourt Brace test, it neither applies the test, nor does it involve a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-00529-JVS (MLGx)                Date   April 26, 2010

Title   TYR Sport Inc. v. Warnaco Swimwear Inc., et al.

TYR argues that evidence that top swimmers are wearing competitors' suits is not necessarily indicative of healthy competition in the Team Dealer market, where Speedo sells roughly 95% of its championship suits.  (COE, Ex. 1 ¶ 19; Brommer Depo. at 90:5-17.)  This may be true, but TYR misunderstands its burden on summary judgment—it must provide affirmative evidence of harm to competition.  It has provided <u>no</u> evidence of Team Dealer sales of manufacturers other than Speedo and TYR, failing to meet its burden and also failing to rebut the Defendants evidence of major penetration by at least one new entrant at a major retailer.[14]

TYR also tries to dismiss the impact of new entrants by noting that many of the new suits have been banned by FINA, the international governing body of swimming.  The Court fails to see the relevance of the FINA ban.  TYR's theory was that the Defendants restrained trade and monopolized the high-end swimsuit market through Schubert's alleged false statements promoting the LZR Racer.  The Defendants have presented some evidence that new competitors entered and took significant market share from both Speedo and TYR, thereby showing that the statements had little effect on competition and that any effect was short-lived.  The fact that FINA banned <u>all</u> the suits—including Speedo's and TYR's— effectively terminating that entire market, does not rebut the Defendants' evidence of new competition prior to the ban.  TYR does not allege any false statements regarding the post-ban suits.  That market is simply irrelevant.[15]

Nor does Nike's exit from the market in September 2008 demonstrate that Schubert's statements had a significant and enduring impact on competition.  (<u>See</u> COE,

---

false advertising claim.  <u>Id.</u> at *2-4, *7-10.

[14]  TYR also presents the declaration of Dean Jackson, Sales Director at blueseventy, noting that, for all of blueseventy's success, it has been unable to sign any NCAA teams to sponsorship contracts.  (Jackson Decl. ¶ 5.)  Jackson states that "Coach Schubert's influence and his relationship with Speedo created a barrier that was 'insurmountable.'" (<u>Id.</u> ¶ 6.)  Jackson does not purport to be an expert on economics and, in any case, attributes the "insurmountable" barrier to Schubert's influence rather than any false advertising.  This declaration is far from demonstrating a significant impact on competition.

[15]  TYR does not rebut evidence that it had trouble meeting demand for its championship suits.  It does submit a declaration that it has the <u>capacity</u> to produce 10,000-12,000 Tracer Light or Tracer Rise swimsuits per month, (Meng Decl. ¶ 2), but this hardly rebuts Speedo's evidence that the demand for TYR's suits outpaced its ability to supply the suits, despite its apparently strenuous efforts to do so.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |
|---|---|---|---|

| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |
|---|---|

Ex. 28.)  Ordinarily, the loss of a significant competitor from the market would signal a major adverse effect on competition and would harm consumers.  However, the Defendants have shown evidence, unrebutted by TYR, that new entrants were producing suits of better quality that even Speedo's and TYR's by the time Nike exited.  (See Lord Decl. ¶¶ 26-28; Schubert Depo. at 94:3-96:8, 182:2-25; USA Swimming Reply Br., Ex. B ¶ 5; Furniss Decl. 85:20-86:8; Bielak Decl., Exs. L ¶ 4-7, M, N, P, V.)  These new suits were apparently gaining widespread acceptance among elite swimmers less than a year after Nike exited.  (Supp. Isaac Decl. ¶ 4, Exs. A-C.)

Moreover, TYR fails to show any link between Schubert's statements and Nike's exit.  On this record, Nike's exit is entirely consistent with normal competition: the well-publicized Olympic success of the LZR Racer combined with new suits developed by blueseventy, Arena, and Jaked may have forced Nike out.  There is no allegation or evidence that Nike had a championship suit comparable to the Speedo LZR Racer, TYR Tracer Rise, or any of the new suits by the new entrants.  Indeed, its willingness to let its top sponsored swimmers swim in Speedo suits at the Olympics suggests otherwise. (COE, Ex. 28.)

The Court also finds that the alleged false advertising does not even overcome the Harcourt Brace de minimis presumption.  At the pleading stage, the Court was hesitant to apply the presumption because TYR had alleged that Schubert's position with USA Swimming gave his statements the appearance of objectivity.  (See Docket No. 72 at 10.) The Harcourt Brace presumption rested partially on the rationale that buyers generally do not trust comments made by competitors.  Id. at 1152.  However, the Ninth Circuit also relied on the difficulty in distinguishing actionable false statements from puffery and the speculative nature of the effects of false advertising, "especially when [it] is not systematic."  Id.  This would apply regardless of whether the speaker had the appearance of objectivity.  That circumstance may be considered within the Harcourt Brace factors, such as the likelihood of inducing reliance or susceptibility of neutralization, but the Court does not find that it negates the application of the presumption entirely.

The Court finds that TYR cannot demonstrate that the statements "continued for prolonged periods."  Id. at 1152.  The only two actionable statements are Schubert's comment at the Manchester swim meet in April 2008 and his statement to two junior swimmers in January 2009.  Two isolated statements to very limited audiences spaced by nearly a year are not the sort of sustained, systematic false advertising that would have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |
| --- | --- | --- | --- |

| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |
| --- | --- |

more than a de minimis effect on competition.  It is not enough to show that there was a long period between the statements; the advertising must be "continued," i.e., sustained, for a prolonged period.  See id. at 1152.

Even if all five of the charged statements were considered, the Court still finds they does not meet the necessary test of sustained advertisement.  One statement was made at a coaches meeting in December 2008, one in an email in March 2008, two at a swim meet in April 2008, and the last to two junior swimmers in January 2009.  Five sporadic statements spread out over the course of more than a year are not the sort of systematic advertising capable of significantly affecting competition.

TYR argues that the "prolonged period" test is a very low burden to meet. However, it has no authority for this proposition.  It argues that National Ass'n of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratories, Division of/and American Home Products Corp., 850 F.2d 904 (2d Cir. 1988), allowed an antitrust disparagement claim to overcome the de minimis presumption despite the fact that the disparagement was contained in a single letter.  Id. at 916-17.  However, unlike the Ninth Circuit, which requires a plaintiff to satisfy all of the six Harcourt Brace elements, 108 F.3d at 1152, the Second Circuit apparently does not find each element mandatory.  Ayerst, 850 F.2d at 916-17; see also Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc., 323 F.3d 366, 371 & n.6 (6th Cir. 2003) (noting the ambiguity of the Second Circuit's test and declining to decide whether all elements must be met in Sixth Circuit).  Ayerst did not find that the single letter was sufficient to meet the "prolonged period" requirement; rather, it allowed the case to proceed despite not meeting that element.  850 F.2d at 917.  Here in the Ninth Circuit, that is not a option. TYR must demonstrate that the statements continued for a prolonged period.

Because TYR has not provided evidence from which a reasonable jury could infer a "significant and enduring adverse impact on competition," the Defendants are entitled to summary judgment on the Sherman Act claims.  Additionally, no triable issue of fact exists as to whether Schubert's "continued for a prolonged period."  Therefore, TYR cannot overcome the presumption that Schubert's statements had only a de minimis effect on competition and the Defendants are entitled to summary judgment on that ground as well.

5.    Remaining State Claims

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 08-00529-JVS (MLGx)                     Date   April 26, 2010

Title   TYR Sport Inc. v. Warnaco Swimwear Inc., et al.

TYR's remaining causes of action are brought under the Cartwright Act and the UCL, and TYR brings a separate claim for injunctive relief.

"Where Cartwright Act claims are premised on the same facts as Sherman Act claims, and summary judgment is granted on the Sherman Act claims, summary judgment is also appropriate for Cartwright Act claims." Breakdown Servs., Ltd. v. Now Casting, Inc., 550 F. Supp. 2d 1123, 1141 (C.D. Cal. 2007) (citing County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1160 (9th Cir. 2001).) Here, the Cartwright Act claim is identical to TYR's Sherman Act claims. Because the Defendants are entitled to summary judgment on the Sherman Act claims, they are entitled to summary judgment on the Cartwright Act claim as well.

The UCL prohibits three separate categories of conduct—"acts or practices which are unlawful, or unfair, or fraudulent." Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999); Cal. Bus. & Prof. Code § 17200. Conduct is "unfair" if it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Id. at 187. Thus, in most cases, "where plaintiff's [UCL] claim is predicated on antitrust violations that fail to withstand summary judgment, the [UCL] claim must also fail." Breakdown Servs., 550 F. Supp. 2d at 1142. Because TYR's UCL claim is based on the same facts as its same failed antitrust claims, the Defendants are entitled to summary judgment on the UCL claim.

TYR's final remaining claim seeks only injunctive relief and does not state an independent cause of action. Because the Defendants are entitled to summary judgment on TYR's remaining claims, the injunctive relief claim fails as well.

III.   RECONSIDERATION

TYR seeks reconsideration of the Court's order granting summary judgment on its false advertising claim under the Lanham Act. The Court granted summary judgment on the grounds that TYR did not have evidence of injury traceable to the alleged false statements. (Docket No. 154 at 25-26.)

A.   Legal Standard

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |
|---|---|---|---|

| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |
|---|---|

Under Rule 59(e), a party may move to alter or amend a judgment within 28 days. The grounds for reconsideration are set forth in Local Rule 7-18, which provides:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

L.R. 7-18.  The Court may disregard evidence or arguments on a motion for reconsideration that could reasonably have been presented prior to this Court's ruling. Hopkins v. Andaya, 958 F.2d 881, 887 n.5 (9th Cir. 1992).

B.    Discussion

TYR moves for reconsideration based on an expert report that it received after the due date for its opposition papers in the original round of summary judgment briefing.  It contends that this report could not, with reasonable diligence, have been completed and submitted with TYR's opposition papers because the expert, Cantor, did not receive necessary data from Speedo until a week before TYR's opposition was due.  (Cantor Decl. ¶ 7.)  Speedo disputes this assertion and argues that TYR could have submitted the report prior to the Court's final order.  The Court need not resolve this dispute, however, because the Court finds no prejudice in considering the new evidence given the second round of summary judgment briefing.  The Court also finds that, even considering the new evidence, Speedo is entitled to summary judgment on the Lanham Act claim.

TYR's Lanham Act claim is premised on two remaining sets of statements: (1) Schubert's claim at the April 2008 Manchester meeting that the Speedo LZR Racer provided a 2% advantage, and (2) his statement to two junior swimmers in Guam in January 2009 that the LZR Racer was "faster" than the non-Speedo suits they were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |
|---|---|---|---|

| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |
|---|---|

wearing.[16]  (See Docket No. 154 at 24-28.)  Given that both statements were made to a limited audience and none of those present switched to Speedo products as a result of the statement, the Court found that TYR had failed to demonstrate any actual deception or any actual injury as a result of the statements.  (Id. at 25-26.)  TYR now argues that Cantor's report demonstrates a loss of sales that can be attributed to "the challenged conduct."  (Cantor Decl., Ex. A.)

In the previous summary judgment order, the Court did not consider whether there was a triable issue as to whether Schubert's statements were false or misleading.  (Docket No. 154 at 28 n.19.)  With respect to the "2% advantage" statement in Manchester, there is some ambiguity as to what Schubert actually said.  One of the swimmers testified that Schubert told him that the LZR Racer "was a two percent improvement on performance from other suits," but "[i]t wasn't specifically made clear that it was two percent in relation to anything else.  It was just two percent improvement."  (Marshall Depo. at 16:8-17.)  Another swimmer who heard the 2% advantage statement at the meeting took it to mean that the LZR Racer was "2 percent better than any suit," but admitted that "[it] wasn't clear" what the 2 percent was being compared to.  (Van Wie Depo. at 49:2-14.)  A third swimmer testified that Schubert stated that the LZR Racer "would give you like a 2 percent advantage," and took that to mean "[t]he 2 percent advantage was 2 percent advantage over all the suits.  It was the fastest suit on the market or something."  (Descenza Depo. at 18:17-20, 19:8-12.)  Schubert claims that he was referring to a 2% advantage over the prior generation of Speedo suits, the Speedo FS Pro.  (Schubert Decl. ¶ 11; Supp. Schubert Decl. ¶ 6.)  Schubert clarified what he was talking about during his interview with Craig Lord: "If you take [the] best times of world record holders and their new times [wearing the LZR Racer], the difference is 2 per cent."  (COE Ex. 13.)

TYR argues that Schubert's statements at the Manchester meet are false because the LZR Racer does not offer a 2% advantage or is not 2% faster than the Tracer Rise.  However, the Tracer Rise was not commercially available—not "on the market"—until

---

[16]  Speedo was granted summary judgment with respect to Schubert's statement to reporter Craig Lord because that statement was not commercial speech or advertising.  (Docket No. 154 at 26-28.)  TYR provides no grounds for reconsidering that ruling.  The other statements that form the basis of TYR's antitrust disparagement claim were either not alleged to be the basis for the Lanham Act claim or were not raised by TYR in opposition to Speedo's prior summary judgment motion.  (See Compl.; Docket No. 127 at 24-30.)  It is too late for them to amend its Lanham Act now, on a motion to reconsider a grant of summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |

| | |
|---|---|
| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |

later in April 2008, after Schubert's 2% advantage comment.  (Furniss 9/3/09 Depo., Ex. 4.)  Thus, even if it is accepted that Schubert was claiming a 2% advantage over all suit currently on the market, it is not reasonable to infer that Schubert was making a direct comparison to the Tracer Rise.[17]  Indeed, in a TYR internal memorandum in April 2008, Matt Zimmer admitted that "very few people even know we have a new product such as Rise."  (Richter Decl., Ex. H.)

TYR also argues that the statements can be shown to be literally false because they imply that testing was done to support the claim.  See Castrol, Inc. v. Quaker State Corp., 977 F.2d 57, 62 (2d Cir. 1992).  However, TYR does not have evidence to rebut Schubert's claim to have analyzed the swimming times of world record holders wearing the LZR Racer and found a 2% difference.[18]  (Supp. Schubert Decl. ¶¶ 3-5.)  In fact, Schubert's analysis was confirmed by USA Swimming statistician Larry Herr, who found a average swim time improvement of 1.55%,[19] (Herr Decl. ¶ 3), by Craig Lord, who found that time improvements in a larger sample clustered in the range of 1.6% to 2.3%, (Lord Decl. ¶ 19), and by TYR-sponsored coach Steve Hutchinson, who also found a roughly 2% time improvement in his own review of swim times, (Zimmer 9/30/09 Depo. at 85:2-86:19, 87:2-88:9, 202:20-203:14).

Because TYR cannot show that Schubert's statement could be reasonably interpreted as a comparison of the LZR Racer against the Tracer Rise or that Schubert's statement was not backed by an informal statistical analysis, TYR has not raised a triable issue of fact as to whether the "2% advantage" statement was false or misleading.

---

[17]  In fact, Schubert claims not to have known about the Tracer Rise at the time, (Supp. Schubert Decl. ¶ 6), though this is disputed.

[18]  The testimony of Genadijus Sokolovas and Russell Mark that USA Swimming and Speedo did not do internal "testing" on swimsuits prior to Schubert's comments, (Sokolovas Depo. at 16:11-25; Mark Depo. at 30:18-31:12), does not rebut Schubert's claim to have informally analyzed swim times involving the LZR Racer.

[19]  TYR argues that Schubert's statement is literally false because of the difference between 1.55% and 2%.  The Court does not think that a statement can reasonably be found to be false because a number is rounded up to an integer according to commonly-accepted rules for rounding, the same used in the federal tax code.  See, e.g., 26 U.S.C. § 3402(b)(5) (allowing rounding to the nearest dollar for calculating withholding).  More precisely, the Court does not think that the difference between 1.55% and the rounded number of 2% is a material difference.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |

| | |
|---|---|
| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |

Moreover, the newly-introduced expert report does not remedy TYR's inability to show a link between Schubert's statements and injury to TYR. TYR must show that the charged statements "actually deceived or [had] the tendency to deceive a substantial segment of its audience [and] is likely to influence the purchasing decision."[20] Southland Sod, 108 F.3d at 1139. Cantor's report states that its "results are consistent with the conclusion that the challenged conduct injured TYR sales." (Cantor Decl.—Ex. A ¶ 50.) The "challenged conduct" is everything that TYR alleged in the Complaint, including the allegations of coercion, TYR's exclusion from Splash magazine, the exclusion of advertising at certain events, and all of the disparaging statements that have been dismissed as puffing or otherwise non-actionable. (See id. ¶ 18; Compl. ¶¶ 10-16.) Thus, Cantor never specifically links the Manchester statement or the Guam statement to the alleged injury, other than as part of the entire range of "challenged conduct." In other words, Cantor has failed to factor out any of the "challenged conduct,"—such as the alleged coercion, the exclusion from Splash magazine and events, the puffing statements, or the statement made to Craig Lord—that is not actionable under the Lanham Act. No reasonable juror could find, based on Cantor's report, that the loss of sales indentified in the report were caused by the statement at the closed meeting in Manchester or the statement to two junior swimmers in Guam. This is especially true where, as here, none of the audience to the charged statements changed their buying behavior as a result of the statements. (Docket No. 154 at 25-26.)

To avoid this failure of proof of actual causation, TYR argues that proof that the statement was spread by word-of-mouth creates a triable issue as to whether any customers were actually deceived.[21] TYR cites two unpublished district court cases for the proposition that injury can be presumed based on word-of-mouth dissemination in certain instances. PBM Prods., LLC v. Mead Johnson & Co., No. 3:09-CV-269, 2010 U.S. Dist. LEXIS 18460 (E.D. Va. March 2, 2010); Fla. Breckenridge, Inc. v. Solvay Pharms., Inc., No. 97-8417-CIV-RYSKAMP, 1998 U.S. Dist. LEXIS 14742 (S.D. Fla.

---

[20] The Lanham Act also requires that the plaintiff prove that the defendant "caused its false statement to enter interstate commerce." Southland Sod, 108 F.3d at 1139. Given that the two charged statements were given personally at a closed meeting in Manchester and to two junior swimmers in Guam, respectively, it is doubtful that TYR could satisfy this requirement either.

[21] The Court rejects this new argument because it is not grounds for reconsideration. TYR has not demonstrated that it could not have raised this argument—which has nothing to do with the new expert report—on summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |
|---|---|---|---|

| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |
|---|---|

March 18, 1998).  Neither case is applicable here.

In PBM Products, the false advertising was disseminated through a mailer sent to roughly 1.6 million customers.  2010 U.S. LEXIS 18460, at *12-13.  In upholding the jury's damage award, the court noted that "[t]he jury heard evidence on the lost profits [the plaintiff] saw near the time the mailer was sent, [and] the 1.6 million individuals who received the mailer as well as those that would learn about it via word-of-mouth."  Id. That case involved very widespread dissemination such that it can be assumed that a substantial section of the customer base heard the false statements, either directly or indirectly.  Here, in contrast, the two statements were made to very limited audiences. The same presumption of widespread dissemination by word-of-mouth cannot be made.

In Florida Breckinridge, the defendant moved for summary judgment on a Lanham Act claim on the ground that oral statements are not commercial advertising.  1998 U.S. Dist. LEXIS 14742, at *20.  The court rejected the argument, noting testimony that, in the relevant market, the "product could not be adequately promoted without . . . in-person and word-of-mouth promotion."  Id. at *21.  Thus, Florida Breckinridge merely stands for the proposition that oral statements, such as in-person or telephone sales calls, can constitute commercial advertising within the meaning of the Lanham Act.  Id. at *20-22. It does not stand for the proposition that a plaintiff can merely invoke "word-of-mouth" to overcome its burden of showing that customers actually heard and were deceived by the alleged false statement.

Here, TYR has evidence that Schubert made the "2% advantage" comment twice, both times at the 2008 Manchester meeting.  (Marshall Depo. at 16:8-17; Descenza Depo. at 18:17-20.)  Both were to a limited audience of 27 elite swimmers and several coaches, none of whom switched to Speedo as a result of the statement.  TYR argues that it has evidence of dissemination through word-of-mouth, because one swimmer "heard from other swimmers and read in media articles that . . . Schubert[] was telling swimmers that the Speedo LZR would provide a 2% advantage to swimmers as compared to other swimsuits."  (Florea Decl. ¶ 4.)  However, this only establishes that one other swimmer heard the statement (and possibly from media sources like the Lord article, which is not actionable), and even he continued to wear TYR after a single experiment with the LZR.[22]

---

[22] TYR argues that it would be impossible to track "word-of-mouth" dissemination.  However, the impact and dissemination of the statement could potentially be measured by consumer surveys, as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 08-00529-JVS (MLGx) | Date | April 26, 2010 |
|---|---|---|---|

| Title | TYR Sport Inc. v. Warnaco Swimwear Inc., et al. |
|---|---|

(Id. ¶¶ 6-7.)  TYR also argues that word-of-mouth is an important part of the swimsuit industry.  (See COE, Ex. 14; Jackson Decl. ¶ 2; Bielak Decl., Ex. M.)  This does not, however, meet TYR's burden of proving that Schubert's statement was <u>actually</u> disseminated.

Finally, even if TYR could show that the statement was disseminated, it has no evidence of deception, particularly in light of the fact that, of all those who actually heard the statement, not one switched to using the Speedo suit as a result.  (Docket No. 154 at 25-26; Florea Decl. ¶¶ 6-7.)

Clearly, the statement by Schubert to the two junior swimmers in Guam fails on same grounds.  There is no evidence that the statement was heard by anybody other than the two swimmers and their coach.  As noted in the Court's prior order, neither of those two swimmers switched to Speedo.  (Docket No. 154 at 26.)

Accordingly, Speedo is entitled to summary judgment on TYR's Lanham Act claim.

IV.    <u>CONCLUSION</u>

For the foregoing reasons, the motions for summary judgment are GRANTED. TYR's motion for reconsideration is DENIED.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | kjt | | |

---

recognized by courts in other Lanham Act claims.  <u>See, e.g.</u>, <u>Brunswick Corp. v. Spinit Reel Co.</u>, 832 F.2d 513, 525 (10th Cir. 1987) ("Actual consumer confusion may be shown by direct evidence, a diversion of sales or direct testimony from the public, or by circumstantial evidence such as consumer surveys.").  TYR has provided no such evidence.